[No. E034908. Fourth Dist., Div. Two. Jan. 31, 2005.]

GARY PENROD, as County Sheriff, etc., Plaintiff and Appellant, v. COUNTY OF SAN BERNARDINO, Defendant and Respondent.

COUNSEL

Jones & Mayer, Martin J. Mayer, Krista MacNevin Jee and Dean J. Pucci for Plaintiff and Appellant.

Ronald D. Reitz, County Counsel, and W. Andrew Hartzell, Chief Deputy County Counsel, for Defendant and Respondent.

Steve Cooley, District Attorney, Brent Riggs and William Woods, Deputy District Attorneys, for the County of Los Angeles as Amicus Curiae on behalf of Plaintiff and Appellant.

OPINION

GAUT, J.—

### 1. Introduction

Plaintiff Gary Penrod, the Sheriff of the County of San Bernardino, mounts a facial challenge against Ordinance No. 3875, giving the county board of supervisors the power to remove the sheriff by a four-fifths vote. Penrod's appeal does not involve any actual effort to invoke the removal power. We hold the ordinance is facially constitutional and affirm the summary judgment in favor of the county.

### 2. Factual and Procedural Background

In July 2002, the board of supervisors adopted Ordinance No. 3863, involving reprimand and removal of county officers, including the sheriff. Ordinance No. 3863 provides removal for cause may be accomplished by a four-fifths vote of the board: "Any County officer other than supervisor may be removed from office in the manner provided by law; also any such officer may be removed by a four-fifths vote of the Board of Supervisors, for cause, after first serving upon such officer a written statement of alleged grounds for such removal, and giving him a reasonable opportunity to be heard in the way of explanation or defense."

Causes for removal include: "(1) Flagrant or repeated neglect of duties. [¶] (2) Misappropriation of public property. [¶] (3) Violation of any law related to the performance of the official's duties. [¶] (4) Willful falsification of a relevant official statement or document." (San Bernardino County Ord. No. 3863.)

Penrod immediately filed a complaint challenging the validity of the ordinance and seeking an injunction against its enforcement. The trial court granted a preliminary injunction and the board then adopted Ordinance No. 3875, omitting the reprimand provisions of Ordinance No. 3863 but retaining the removal provisions. The second ordinance also clarified that it could "not be applied to interfere with the independent and constitutionally and statutorily designated investigative and prosecutorial functions of the sheriff and the district attorney."

Ultimately, Penrod filed a first amended complaint in June 2003. The court entertained cross-motions for summary judgment, granted the county's motion, and denied Penrod's motion, finding the removal provisions to be constitutional and valid.

## 3. Discussion

■ We conduct a de novo review of the grant of a motion for summary judgment, especially since it involves issues of statutory and constitutional interpretation. (*Buss v. Superior Court (Transamerica Ins. Co.)* (1997) 16 Cal.4th 35, 60, 65 [65 Cal.Rptr.2d 366, 939 P.2d 766]; *Upland Police Officers Assn. v. City of Upland* (2003) 111 Cal.App.4th 1294, 1301 [4 Cal.Rptr.3d 629].)

Penrod repeatedly contends the sheriff is only subject to removal by two methods: recall (Cal. Const., art. II, §§ 13–19; Elect. Code, § 11000 et seq.) or grand jury accusation and trial. (Gov. Code, § 3060 et seq.) He maintains the county charter and Ordinance No. 3875 could allow an "unconstitutional 'removal' of the constitutionally mandated, elected sheriff." Although he concedes the board has not tried or threatened to use its removal powers, Penrod also objects that the ordinance has the potential to interfere with the sheriff's investigative and prosecutorial functions.

■ Penrod bears a significant burden to demonstrate the facial, rather than "as applied," unconstitutionality of a legislative enactment: "A party claiming that a legislative enactment is invalid on its face confronts daunting obstacles to success. The first hurdle to overcome is the bedrock principle that courts are exceedingly reluctant to declare legislation unconstitutional. From this reluctance has come the oft-cited rule that 'All presumptions and intendments favor the validity of a statute and mere doubt does not afford sufficient reason for a judicial declaration of invalidity. Statutes must be upheld unless their [un]constitutionality clearly, positively and unmistakably appears.' [Citations.] In implementing these principles courts presume that a Legislature did not intend to exceed the scope of its

lawful power. From this presumption has developed the rule that courts will construe statutes in a manner that removes doubts as to constitutionality. [Citations.] Another rule is that a statute 'cannot be held void for uncertainty if any reasonable and practical construction can be given to its language.' [Citations.]" (*Personal Watercraft Coalition v. Marin County Bd. of Supervisors* (2002) 100 Cal.App.4th 129, 137 [122 Cal.Rptr.2d 425].)

In an effort to establish facial unconstitutionality, Penrod equates the county sheriff with a state official like the Governor subject to the same limits on removal procedures. That argument cannot succeed because the county has the legal right and duty to decide removal procedures for the sheriff.

■ San Bernardino became a charter county in 1913. (Stats. 1913, ch. 33, p. 1652.) The Constitution recognizes "Home Rule," described as "the right of the people of a charter county to create their own local government and define its powers within limits set out by the Constitution." (*Dibb v. County of San Diego* (1994) 8 Cal.4th 1200, 1218 [36 Cal.Rptr.2d 55, 884 P.2d 1003]; see *Younger v. Board of Supervisors* (1979) 93 Cal.App.3d 864, 869 [155 Cal.Rptr. 921].) ■ The California Constitution requires that a county charter shall provide for an elected sheriff. The Constitution also requires the charter to provide for the "compensation, terms and removal" of the sheriff. (Cal. Const., art. XI, § 4.) ■ Government Code section 24000, subdivision (b), enumerates county officers, including the sheriff. Sections 24009 and 24205 require the sheriff be elected by the county's electorate. The sheriff is a county officer, not a state official.

That conclusion is not altered by *Venegas v. County of Los Angeles* (2004) 32 Cal.4th 820 [11 Cal.Rptr.3d 692, 87 P.3d 1], holding that a sheriff, when performing law enforcement functions, is a state actor immune from liability under 42 United States Code section 1983, or other similar cases involving section 1983 immunity. (*Brewster v. Shasta County* (9th. Cir. 2001) 275 F.3d 803; *Pitts v. County of Kern* (1998) 17 Cal.4th 340 [70 Cal.Rptr.2d 823, 949 P.2d 920]; *County of Los Angeles v. Superior Court* (*Peters*) (1998) 68 Cal.App.4th 1166 [80 Cal.Rptr.2d 860].)

The present case does not involve section 1983 immunity. Furthermore, the subject ordinance specifically prohibits it being applied "to interfere with the independent and constitutionally and statutorily designated investigative and prosecutorial functions of the sheriff." Therefore, a sheriff could not be removed for performing law enforcement functions.

■ Nor is Penrod helped by *Younger v. Board of Supervisors, supra,* 93 Cal.App.3d 864, in which the court found unconstitutional a county charter amendment imposing term limits on county elective officials. *Younger* does

not support Penrod's proposition that the County cannot provide for an alternative method to remove the sheriff and other county officers in addition to the general state laws which provide for removal from office. In fact, *Younger* states the opposite, holding that as a general principle, a county may exercise all authority granted it by the state Constitution:

"[I]f a charter provision is properly authorized, then it supersedes general state laws in conflict, but only to the extent it is not limited by the Constitution. [Citation.] For, it is without dispute that local rules or regulations relating to matters which a county is constitutionally empowered to regulate by charter supersede general state laws on the subject, except as to matters covered by general law where '(a) the local legislation attempts to impose additional requirements [citations], or (b) the subject matter is one of state concern, and the general law occupies the entire field [citation], or (c) the subject matter is of such statewide concern that it can no longer be deemed a municipal affair [citation].' [Citations.]

"Therefore, a charter county has only those powers and can enact within its charter only those provisions authorized by the Constitution. These include those enumerated in article XI, section 4, *supra*. Further, in light of the language of subdivision (h) of section 4, a charter county has all powers provided for counties under the general laws as well, including those powers 'necessarily implied from those expressed.' (Gov. Code, § 23003.)" (*Younger v. Board of Supervisors, supra,* 93 Cal.App.3d at p. 870.)

■ Ordinance No. 3875 is specifically authorized by article XI, section 4 of the Constitution, subdivision (c). The Attorney General has approved Ordinance No. 3875 as constitutional. (84 Ops.Cal.Atty.Gen. 88 (2001).) Its opinion is entitled to considerable weight. (*County of San Diego v. State of California* (1997) 15 Cal.4th 68, 103 [61 Cal.Rptr.2d 134, 931 P.2d 312].)

Furthermore, Ordinance No. 3875 is also authorized by and consistent with Government Code section 25303, which provides "The board of supervisors shall supervise the official conduct of all county officers . . . particularly insofar as the functions and duties of such county officers . . . relate to the assessing, collecting, safekeeping, management, or disbursement of public funds. [¶] It shall see that they faithfully perform their duties, direct prosecutions for delinquencies, and when necessary, require them to renew their official bond, make reports and present their books and accounts for inspection."

Ordinance No. 3875 contains the same limitation as Government Code section 25303: "This section shall not be construed to affect the independent and constitutionally and statutorily designated investigative and prosecutorial

functions of the sheriff and district attorney of a county. The board of supervisors shall not obstruct the investigative function of the sheriff of the county nor shall it obstruct the investigative and prosecutorial function of the district attorney of a county."

In contrast, Penrod cites no authority holding that the Constitution, while expressly directing that a county charter provide for removal of the sheriff, limits the method to recall or a grand jury accusation.

■ We also reject Penrod's argument that the amendment of the Constitution in 1978, requiring a sheriff be elected, not appointed, converted the sheriff from a county officer into the equivalent of a state official and that Ordinance No. 3875 vitiates the sheriff's accountability to the electorate. The voters can still recall the sheriff or the sheriff may be subject to a grand jury indictment and a trial. In addition, Ordinance No. 3875 empowers the board to remove the sheriff only for cause, including neglect of duties, misappropriation, legal wrongdoing and falsification. There may be circumstances about which we decline to speculate, when the board would need to act expeditiously to remove a corrupt county officer rather than wait for a grand jury to convene or a recall election to be held. But that does not mean the voters' power has been nullified or that Ordinance No. 3875 is facially unconstitutional.

In addition to his objections to the removal provisions of Ordinance No. 3875, Penrod challenges the section of the ordinance that states: "All department heads, elected or appointed, are responsible for the operation of their respective departments. Department heads will be held accountable for the actions of their department personnel including actions which expose the County to risk of loss or actual losses by way of injury to third parties. The Board may determine with respect to a specific incident or loss, that the responsibility for payment of that loss lies with the department and such loss will be paid out of the responsible department's budget rather than paid out of general County contingency reserves. The purpose of this section is to hold departments responsible for losses which should have been prevented through sound management practices.

"This section shall not be applied to interfere with the independent and constitutionally and statutorily designated investigative and prosecutorial functions of the sheriff and the district attorney."

■ Notwithstanding the latter provision, Penrod protests that this section presently "impedes the manner in which the Sheriff carries out his duties and operates his department." Penrod recognizes that, under Government Code section 25303, the Board is legally authorized and obliged to supervise the

sheriff, especially concerning fiscal matters, without affecting the sheriff's investigative and prosecutorial functions. (*Dibb v. County of San Diego, supra,* 8 Cal.4th at p. 1210.) That section also states: "Nothing contained herein shall be construed to limit the budgetary authority of the board of supervisors over the district attorney or sheriff." (Gov. Code, § 25303.) Therefore, it is hard to understand how the sheriff can still assert the ordinance, in all circumstances, impedes his duties and the operation of his department. If, at some point, the board should impermissibly intrude on the sheriff's investigative and prosecutorial functions, such as happened in *Hicks v. Board of Supervisors* (1977) 69 Cal.App.3d 228 [138 Cal.Rptr. 101], the sheriff can raise a challenge then. But the ordinance on its face is not unconstitutional.

Finally, Penrod urges that, independent of any removal authority, presumably even by recall or grand jury accusation, there must still be compliance with the Public Safety Office Procedural Bill of Rights Act. In his opening brief, he asserts that the ordinance cannot be read to preempt the Public Safety Office Procedural Bill of Rights Act, Government Code sections 3300–3312. In his reply brief, he devotes considerable pages to arguing that the Act and the Ordinance's removal provision are not in conflict and that removal still could be accomplished while affording the Act's procedural rights. Again, however, Penrod is visiting the territory of the possible future and not confining himself to the question of the facial constitutionality of the ordinance. Therefore, we decline to speculate on whether someday a four-fifths board vote to remove the sheriff might violate the Public Safety Office Procedural Bill of Rights Act.

## 4. Disposition

We affirm the judgment and award costs on appeal to the county as the prevailing party.

Richli, J., concurred.

**RAMIREZ, P. J.,** Concurring.—Today the majority holds that certain challenged sections of the San Bernardino County Code (County Code) have not been shown on their face to be in conflict with the California Constitution. I agree with their conclusion on the merits. However, I write separately to further examine the issues considered by the majority and also to address additional points raised by the appellant that were omitted from the majority analysis. As indicated, this case presents an issue as to the constitutionality of certain County Code sections. It reaches this court as an appeal from a judgment entered after the County of San Bernardino's (County) motion for

summary judgment was sustained. Penrod also appeals from the trial court's order dissolving an earlier granted preliminary injunction. Both the summary judgment for County and the dissolution of the injunction flow from the determination that the challenged County Code sections were not shown to be facially unconstitutional. Thus if summary judgment was proper, as this court concludes it was, the dissolution order was also proper and must be affirmed. The purpose of summary judgment "is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute. [Citation.]" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 844 [107 Cal.Rptr.2d 841, 24 P.3d 493] (*Aguilar*).) Our de novo review is governed by Code of Civil Procedure section 437c, which provides in subdivision (c) that a motion for summary judgment may only be granted when, considering all of the evidence set forth in the papers and all inferences reasonably deducible therefrom, it has been demonstrated that there is no triable issue as to any material fact and the cause of action has no merit. The pleadings govern the issues to be addressed. (*City of Morgan Hill v. Brown* (1999) 71 Cal.App.4th 1114, 1121 [84 Cal.Rptr.2d 361].) A defendant moving for summary judgment bears the burden of persuasion that there is no triable issue. This burden is met by producing evidence that demonstrates that a cause of action has no merit because one or more of its elements cannot be established to the degree of proof that would be required at trial, or that there is a complete defense to it. Once that has been accomplished, the burden shifts to the plaintiff to show, by producing evidence of specific facts, that a triable issue of material fact exists as to the cause of action or the defense. (*Aguilar, supra*, 25 Cal.4th at pp. 849–851, 854–855.) If there is no triable issue of fact and the only point to be determined is one of law, then the court must determine the issue of law. (*Marron v. Superior Court* (2003) 108 Cal.App.4th 1049, 1057 [134 Cal.Rptr.2d 358].)

Plaintiff Gary Penrod, the Sheriff of San Bernardino County (Penrod), filed a complaint against the County seeking a declaration from the court that County Code sections 13.0402(b), 13.0403, 13.0404(b) and 13.0404(c),[1] as enacted by San Bernardino County Ordinance (County Ordinance) Nos. 3863 and 3875, are unconstitutional as violative of the California Constitution, article IX, section 4, subdivision (c), and violative of state law, specifically, Government Code section 3300 et seq. (the Public Safety Officers Procedural

---

[1] In preparing his first amended complaint, Penrod cited County Code section 13.0404(d). However, the revised version of that section contains no subdivision (d). That subdivision in the original version has been renamed subdivision (c), which, presumably, is what Penrod intended to challenge.

Bill of Rights Act (POBR)), as applied to his office.[2] He also sought an injunction preventing County from enforcing the contested provisions of its code against the office of the sheriff. Thus, in order to obtain summary judgment, it was County's initial burden to demonstrate that Penrod could not prevail.

County pointed out that in order to succeed, Penrod had to demonstrate that the challenged code sections " 'inevitably pose a present total and fatal conflict with applicable constitutional prohibitions.' [Citations.]" (*Personal Watercraft Coalition v. Marin County Bd. of Supervisors* (2002) 100 Cal.App.4th 129, 138 [122 Cal.Rptr.2d 425].) This essentially means that Penrod must demonstrate " ' "that *no set of circumstances exists under which the* [*County Ordinance*] *would be valid*," ' [citations] . . . [or] 'that the law is . . . "*impermissibly vague in all of its applications*." ' [Citations.]" (*Ibid.*, original italics.) Thus, a showing that in some hypothetical situations constitutional questions might arise is insufficient. (*Ibid.*)

County next established that under article XI, section 3, subdivision (a) of the California Constitution, the electorate of a county may adopt a charter, the provisions of which supersede all laws with which they are inconsistent. County adopted such a charter, which became effective in 1913. Article XI, section 4 of the California Constitution compels counties that have charters to include provisions for "[a]n elected sheriff, an elected district attorney, an elected assessor, other officers, their election or appointment, compensation, terms and removal." (*Id.*, subd. (c).) Pursuant to that constitutional requirement, County's charter provides in article 2, section 6, that "[a]ny County officer other than supervisor may be removed from office in the manner provided by law; also any such officer may be removed by a four-fifths vote of the Board of Supervisors, for cause, after first serving upon such officer a written statement of alleged grounds for such removal, and giving him a reasonable opportunity to be heard in the way of explanation or defense." According to the opinion of the Attorney General, this section of County's charter is constitutional. (84 Ops.Cal.Atty.Gen. 88 (2001).)

To clarify article 2, section 6 of its charter, County enacted County Ordinance No. 3863 establishing sections 13.0401 through 13.0404 of the County Code, relating to standards of conduct for County officials. County Ordinance No. 3875 amended certain of those code sections to read as currently challenged by Penrod.

Section 13.0404(b) of the County Code provides that "[t]he removal of an elected County officer is an extraordinary act and should occur only in the

---

[2] Neither in his opposition below nor in his briefs on appeal does Penrod address section 13.402(b) of the County Code. Therefore, we deem any challenge to that section abandoned. (*RTC Mortgage Trust v. Shlens* (1998) 62 Cal.App.4th 304, 311, fn. 2 [72 Cal.Rptr.2d 581].)

most egregious of circumstances and only when the interests of the citizens of the County cannot be reasonably served by any other means. These circumstances include the exposure of the County, or its employees, to irreparable harm." Section 13.0404(c) provides that "[f]or purposes of Section 6, Article II [of County's charter], 'cause' shall be defined as [¶] (1) Flagrant or repeated neglect of duties. [¶] (2) Misappropriation of public property. [¶] (3) Violation of any law related to the performance of the officer's duties. [¶] (4) Willful falsification of a relevant official statement or document." Thus, County argues, it has merely clarified the circumstances under which it could have recourse to article 2, section 6 of its charter to remove an elected County officer.

County demonstrated that rather than forbidding the challenged code sections as Penrod claimed, article XI, section 4 of the California Constitution, by requiring county charters to provide for the removal of an elected sheriff and other county officers, specifically authorized them.

Section 13.0403 of the County Code provides that "[a]ll department heads, elected or appointed, are responsible for the operation of their respective departments. Department heads will be held accountable for the actions of their department personnel including actions which expose the County to risk of loss or actual losses by way of injury to third parties. The Board may determine with respect to a specific incident or loss, that the responsibility for payment of that loss lies with the department and such loss will be paid out of the responsible department's budget rather than paid out of general County contingency reserves. The purpose of this section is to hold departments responsible for losses which should have been prevented through sound management practices. [¶] This section shall not be applied to interfere with the independent and constitutionally and statutorily designated investigative and prosecutorial functions of the sheriff and the district attorney."

In support of its authority to enact this code section, County cited Government Code section 25303, which provides that, except insofar as it cannot affect the independent and constitutionally and statutorily designated investigative and prosecutorial functions of the sheriff and the district attorney, the board of supervisors is required to supervise the official conduct of all county officers, particularly as it relates to the management of public funds, and has budgetary authority over the district attorney and sheriff. Article XI, section 4, subdivision (h) of the California Constitution gives charter counties "all the powers that are provided by this Constitution or by statute for counties." Thus, County has the authority conferred upon it by the Government Code to supervise the sheriff so long as it does not impinge upon the investigative functions of the office.

With respect to the requirements of the POBR County argues that its provisions, if contrary to the charter, are superseded by the charter according to article XI, sections 3, subdivision (a) and 4, subdivision (g) of the California Constitution,[3] because it demonstrated that it was competent to make provisions for the supervision and removal of the office of sheriff.

These arguments by County were sufficient to demonstrate that Penrod could not prevail on his facial challenge to its ordinances and therefore could have neither the declaration of unconstitutionality nor the injunction that he sought. The burden then fell on Penrod to demonstrate that County's analysis was incorrect and that the ordinances were indeed facially unconstitutional and violative of state statutes as applied to his office.

As noted in the majority opinion, Penrod emphasizes that the sole method for removal of the sheriff, according to state law, is by grand jury accusation or recall. In support of this position, he cites article II, sections 13 through 19 of the California Constitution, as well as Elections Code section 11000 et seq. and Government Code section 3060. However, rather than mandating recall and accusation as the only methods by which elected charter county officers can be removed, the cited provisions merely authorize these as possible methods of removal and outline some procedures for them. There is no provision stating that simply because the sheriff is now elected, the constitutional requirement that a charter county include in its charter terms for removal from office is limited to those measures. Had the electorate so intended, it presumably would have included such language in its enactment. This court may not, in interpreting a statute, add what is not present. (*In re Hoddinott* (1996) 12 Cal.4th 992, 1002 [50 Cal.Rptr.2d 706, 911 P.2d 1381]; *Wang v. Massey Chevrolet* (2002) 97 Cal.App.4th 856, 868–869 [18 Cal.Rptr.2d 770].)

Penrod also argues that County, through its membership in the California State Association of Counties (CSAC), has admitted that removal of an elected sheriff is through grand jury accusation and recall. He points out that in *Brewster v. Shasta County* (2001) 275 F.3d 803, CSAC urged that position when arguing that a sheriff is a state actor for purposes of liability under 42 United States Code section 1983 when investigating crime. Penrod cites

---

[3] ". . . County charters adopted pursuant to this section shall supersede any existing charter and all laws inconsistent therewith. The provisions of a charter are the law of the State and have the force and effect of legislative enactments." (Cal. Const., art. XI, § 3, subd. (a).)

"Whenever any county has framed and adopted a charter, and the same shall have been approved by the Legislature as herein provided, the general laws adopted by the Legislature in pursuance of Section 1(b) of this article, shall, as to such county, be superseded by said charter as to matters for which, under this section it is competent to make provision in such charter, and for which provision is made therein, except as herein otherwise expressly provided." (Cal. Const., art. XI, § 4, subd. (g).)

Evidence Code section 1220 in support of his contention that CSAC's argument in its amicus curiae brief constitutes an admission by County. There are problems with this position. The first is that Evidence Code section 1220 deals with an admission against interest as an exception to the hearsay rule, which is not at issue here. Next, CSAC did not argue that the only possible method of removal was through recall and accusation. Perhaps Penrod meant to argue that County should be judicially estopped from taking a contrary position to that previously adopted by CSAC, but he has not set out the requirements for a judicial estoppel, nor has he demonstrated how those requirements are met in this case. He has not even presented any evidence that County was a member of CSAC, no less that it was aware of the position CSAC was taking in the *Brewster* case.

He then argues that County is limited to powers explicitly delegated to it by the California Constitution or Legislature. (*Younger v. Board of Supervisors* (1979) 93 Cal.App.3d 864, 870 [155 Cal.Rptr. 921] (*Younger*).) While that is certainly true, County has pointed to article XI, section 4, subdivision (c), which requires a county charter to provide for the removal of the elected sheriff. Thus, the power to provide for removal has been explicitly delegated to charter counties. And, as was noted above and in the majority opinion, the constitutional provision that affords that power does not limit it. While that may not be the best rule from a policy standpoint, that is the rule as adopted by the California electorate.

On appeal, Penrod has essentially abandoned one of his primary arguments below: that the clause requiring charter counties to provide for "compensation, terms and removal" applies only to "other officers" and not the enumerated elected officers. Having failed to argue the point on appeal, it is waived. (*Breneric Associates v. City of Del Mar* (1998) 69 Cal.App.4th 166, 188, fn. 8 [81 Cal.Rptr.2d 324].) Consequently, Penrod's primary attack on the removal right conferred by article XI, section 4 of the California Constitution is that it does not apply to the sheriff because he is a constitutionally mandated elected official. Therefore, while admittedly a county official, the sheriff should be treated as a state official for purposes of removal from office. This assertion has been refuted in the majority opinion. Simply by requiring that the sheriff be elected, the Constitution did not impart to the local office the trappings of a state office. For example, Elections Code section 11004 provides that for purposes of recall, an elective officer of a county is a local officer. Further, Elections Code sections 11100 through 11227 provide separate mechanisms for the recall of state versus local elected officials. From the existence of these separate methods for recalling elected officials, it follows that merely making a county official elected rather than appointed does not transmute the position into a state official for purposes of removal.

Along the same lines, Penrod argues that the Legislature has maintained control over the qualifications and tenure of elected county officials. (*Younger, supra*, 93 Cal.App.3d at pp. 871–872.) The Legislature having maintained state control over qualifications and tenure, he claims it is illogical to interpret the Constitution's grant of removal power to include elected officials. Significantly, *Younger* was decided under a different version of the Constitution than we have today. Still, the principles upon which it was decided remain the same, and they cut against Penrod's argument. The *Younger* court relied on the express language of the Constitutional grants. (*Ibid.*) Currently, the Constitution assigns to charter counties the responsibility of providing for the removal of all of its officers, whether elected or not. (Cal. Const., art XI, § 4, subd. (c).) This reality also vitiates Penrod's related claims that the Legislature's control over the duties of the sheriff renders illogical charter county control over his or her removal,[4] and that direct supervision of the sheriff by the Attorney General (Cal. Const., art. V, § 13; Gov. Code, §§ 2560, 12561) renders it counterintuitive to allow a charter county board of supervisors supervision to the point of removal.

Penrod also suggests that County's interpretation of California Constitution, article XI, section 4, subdivision (c) is too broad because article XI, section 4, subdivision (e) requires the charter to provide for the powers and duties of all county officers, but the Legislature has provided for the duties of the sheriff. Penrod argues that both subdivisions should be applied or interpreted in the same fashion, which would preclude a supposition that requiring County to provide for removal in its charter gives County the right to determine that removal is to occur other than as provided by statute or the Constitution. As noted in footnote 3, *ante*, the extent to which a charter county may still determine the duties of the office of sheriff remains an open question. Thus, because County may well retain some authority to provide for the duties of the office of sheriff under California Constitution, article XI, section 4, subdivision (e), it is not an inconsistent interpretation to hold that County also maintains the authority to provide for an alternative method of removal of county officers under subdivision (c).

Next, Penrod argues that in order to properly interpret the constitutional provision at issue, we must have recourse to the legislative intent, which in this case is the voter's intent. (*Thompson v. Department of Corrections* (2001) 25 Cal.4th 117, 122 [105 Cal.Rptr.2d 46, 18 P.3d 1198] (*Thompson*).) According to the arguments contained in the voter information guide, the

---

[4] In his reply brief Penrod cites *Beck v. County of Santa Clara* (1988) 204 Cal.App.3d 789, 796 [251 Cal.Rptr. 444], for the proposition that the Legislature maintains the power to define the sheriff's duties. However, the *Beck* court actually declined to determine to what extent the Legislature shared that power with charter counties, thus leaving it an open question. (*Id.* at p. 797.)

purpose of amending the Constitution to require that sheriffs throughout the state be elected was to make that office answerable directly to the people and therefore free from political influence. Penrod complains that the County Code sections enacted by County Ordinance No. 3875 render the sheriff answerable to the board of supervisors instead of the public and therefore compromises the political independence of the office, all of which is contrary to the voters' intent.

This argument presupposes that article XI, section 4, subdivision (c) of the California Constitution is ambiguous and requires recourse to extrinsic evidence of the intent of the enactors. If the language of the provision is clear when the words are given their ordinary meaning, no construction is required. (*Thompson, supra,* 25 Cal.4th at p. 122.) Penrod provides no argument on this issue. Assuming that the provision is ambiguous, the court may consider the arguments contained in voter pamphlets as some evidence of the intent of the electorate in enacting the provision. (*The Recorder v. Commission on Judicial Performance* (1999) 72 Cal.App.4th 258, 269 [85 Cal.Rptr.2d 56].) Still, as pointed out by the majority, a code section that allows the board of supervisors to remove the sheriff for enumerated offenses under the most egregious circumstances and by a four-fifths vote does not render the office unanswerable to the people, who retain their power to select a candidate and to remove that person through recall. And, Penrod does not explain why an accusation by 12 grand jurors would result in any more direct voter control over the removal of the sheriff than a vote of the board of supervisors. Further, the County Code, which provides for the method of removal, is itself an enactment of the people, who have the right to alter it, if by no other means, then through their elected representatives, should they find it offensive to their best interests. In addition, because the office of the sheriff is elected by the people, rather than appointed by the board of supervisors, it remains politically independent. To the extent that the sheriff may come under the sway of the board of supervisors due to threats of removal, under the code sections at issue a sheriff is protected from possible political influence by the requirements that removal "is an extraordinary act and should occur in only the most egregious of circumstances and only when the interests of the citizens of the County cannot be reasonably served by any other means" including irreparable harm to the County or its employees and under the four enumerated definitions of "cause." (County Code, § 13.0404, subds. (b) & (c).) Further, the board of supervisors may not interfere with the independent and constitutionally and statutorily designated investigative and prosecutorial functions of the sheriff and therefore could not threaten removal as a consequence of a sheriff's investigation of one or more members of that body.

Penrod also complains that California Constitution, article XI, section 4, subdivision (c) cannot be construed to allow for any method of removal chosen by County because that would allow it to nullify the elective choice of

the people, even without any finding of misconduct. The appellate court is not in the business of speculating as to what a charter county might do with the power delegated to it by the Legislature. Rather, under this facial challenge to the ordinance, the concern is with the power County has actually attempted to exercise. As just explained, the County Code provisions at issue do not nullify the elective choice of the people, but rather are to be applied only in the people's best interests.

Finally, Penrod suggests that the new County Code sections interfere with his discretion because the board of supervisors may determine when and if the sheriff has neglected the duties of the office or may remove the sheriff for inadvertent civil rights violations against the public. Government Code section 25303 provides the board of supervisors with supervisory capacity over the office of the sheriff, and specifically over whether the duties of the office are faithfully performed, so long as it does not affect or obstruct the investigative function of the office. Thus, the board has specific statutory authority to determine whether the sheriff has neglected the duties of the office. As for inadvertent violations of civil rights laws, County Code section 13.0404, subdivision (b) allows removal only in the "most egregious of circumstances and only when the interests of the citizens of the County cannot be reasonably served by any other means." Inadvertent actions do not seem to qualify under this definition. However, this court need not decide that point because on their face, the code sections at issue need not be applied so as to interfere with the sheriff's discretion. Because Penrod has not demonstrated that there are no circumstances under which they may be applied in a constitutional fashion, he has failed to rebut the County's showing and is therefore not entitled to reversal of the summary judgment on appeal.

With respect to County Code section 13.0403, Penrod urges that the independence of the sheriff is impeded by the provision allowing for alteration of the budget based upon the board of supervisors' determination whether unsound management practices resulted in losses to the department. This loss of independence ensues, Penrod argues, because the new code section impermissibly gives the board of supervisors the right to control the operations of the sheriff's department to the extent that it can manipulate the budget based upon its interpretation of sound management practices.

Penrod cites the following cases in support of his position. *Venegas v. County of Los Angeles* (2004) 32 Cal.4th 820 [11 Cal.Rptr.3d 692, 87 P.3d 1] holds that a "county board of supervisors has no direct control over a sheriff's performance of law enforcement functions." (*Id.* at p. 834.) *Brandt v. Board of Supervisors* (1978) 84 Cal.App.3d 598 [147 Cal.Rptr. 468] holds that "a board of supervisors has no legal authority to use its budgetary power to control employment in or operation of the sheriff's office [citation]." (*Id.* at

p. 602.) *Hicks v. Board of Supervisors* (1977) 69 Cal.App.3d 228 [138 Cal.Rptr. 101] states that "although the county board of supervisors has authority to supervise county officers in order to insure that they faithfully perform their duties [citation], the board has no power to perform county officers' statutory duties for them or direct the manner in which duties are performed [citation] . . . ." (*Id.* at p. 242.) *People v. Brophy* (1942) 49 Cal.App.2d 15 [120 P.2d 946] provides that county supervision of the sheriff does not contemplate control such that the sheriff could avoid the constitutional duties of the office by permitting a substitution of judgment. (*Id.* at p. 28.) And, 77 Ops.Cal.Atty.Gen. 82 (1994) concludes that a board of supervisors may not direct the sheriff regarding the manner in which budget allotments are to be expended.

None of these cases requires that this court conclude that County Code section 13.0403 is unconstitutional on its face. Section 13.0403 does not enable County to direct the sheriff how to expend the funds that are allotted to the department, but rather informs the sheriff and all other department heads that the board of supervisors may determine that their budget allotment will not be increased to cover losses incurred by a department through mismanagement. This is not the same as a board of supervisors directing a sheriff to hire a certain number of deputies, or directing their deployment, or requiring that cases be handled in a particular fashion, which would unconstitutionally infringe on the sheriff's investigative functions. Rather, in supervising the conduct of the sheriff, as it is required to do under Government Code section 25303, the board merely has authority to reduce the department's operational budget, if it finds that the budget is being misused. And, while Government Code section 25303 emphasizes fiscal concerns as of "particular" concern, the supervisory duty of the board of supervisors over county officers is not limited merely to fiscal concerns. (*Dibb v. County of San Diego* (1994) 8 Cal.4th 1200, 1209 [36 Cal.Rptr.2d 55, 884 P.2d 1003].) Such exercise of its supervisory duties is acceptable so long as the total budget allotted to the sheriff remains adequate to fund the prescribed duties of the office. And, as pointed out by the majority, County Code section 13.0403 specifically states that it cannot be applied to "interfere with the independent and constitutionally and statutorily designated investigative . . . functions of the sheriff." Thus, it can and must be applied in a manner that is not offensive to the Constitution.

Finally, Penrod argues that this court should determine whether the provisions allowing for removal of the sheriff by the board of supervisors must comply with the POBR. In his complaint, Penrod asserted that County Ordinance No. 3875 violated the POBR. On appeal, he urges that he is entitled to the procedural protections of the POBR before he can be removed from office. However, County Ordinance No. 3875 does not provide any specific procedural framework for removal of the sheriff for misconduct. If

indeed the POBR applies to the sheriff, there is nothing in County Ordinance No. 3875 that is necessarily offensive to its requirements. Thus, Penrod has failed to demonstrate that the ordinance necessarily violates the statutes.

In addition to arguing that County Ordinance No. 3875 violates the POBR, Penrod now also seeks a determination that the POBR is not preempted by the County charter and applies to the office of the sheriff. A determination of these issues is not necessary for a resolution whether summary judgment was properly entered against Penrod's complaint. In essence, then, what he seeks is an improper advisory opinion as to these concerns that this court cannot provide him. (*Younger v. Superior Court* (1978) 21 Cal.3d 102, 119–120 [145 Cal.Rptr. 674, 577 P.2d 1014].)

As a result of this analysis, I must conclude that Penrod failed to demonstrate that the challenged ordinances were facially repugnant to the California Constitution or the specified laws of this state. For these reasons and for those set forth in the majority opinion, I concur in the majority's decision to affirm both the judgment and the order dissolving the preliminary injunction.