TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

VENUS D. JOHNSON
Chief Deputy Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 22-303 |
| of | : | |
| | : | June 17, 2022 |
| VENUS D. JOHNSON | : | |
| Chief Deputy Attorney General[1] | : | |
| | : | |
| MARC J. NOLAN | : | |
| CATHERINE BIDART | : | |
| Deputy Attorneys General | | |

The ALAMEDA COUNTY TAXPAYERS' ASSOCIATION, INC., MARCUS CRAWLEY, DAVID DENTON, STEVE SLAUSON, and ROBERT TUCKNOTT, have applied for leave to sue DAVID KYLE BROWN in quo warranto to remove him from his public office as a member of the Alameda County Board of Supervisors, representing District 3. The application asserts that Brown is ineligible to serve on the Board of Supervisors because he did not and does not satisfy the legal residency requirements for that office.

We conclude that there are substantial issues of law and fact as to whether Brown is eligible to hold office on the Alameda County Board of Supervisors and, because the public interest will be served by allowing the proposed quo warranto action to proceed, the application for leave to sue is GRANTED.

---

[1] Attorney General Rob Bonta voluntarily recused himself from personal involvement in this matter. Accordingly, the Chief Deputy Attorney General has exercised and will continue to exercise final authority over the Department's decisions in this matter.

## INTRODUCTION AND BACKGROUND

On November 3, 2021, Wilma Chan, the Supervisor for District 3 on the Alameda County Board of Supervisors, was struck by a car and ultimately died from her injuries, creating a vacancy on the Board of Supervisors. Shortly after, proposed defendant Brown, who was Supervisor Chan's chief of staff, decided to seek appointment to serve the remainder of Chan's term. At the time of Chan's death, Brown was living in a house in the City of Walnut Creek, in Contra Costa County, with his wife and two minor children.

After Chan's death, Brown began taking a series of steps to establish residency in the City of Oakland, in Alameda County's District 3. According to his sworn statements, Brown moved into a friend's apartment in Oakland on November 12, 2021. Approximately one month later, Brown moved into his own apartment in the same apartment complex. Brown also changed his voter registration and various mailing records to those Oakland addresses. Meanwhile, Brown's wife and children continued to reside in their Walnut Creek home.[2]

On November 16, 2021, the Board of Supervisors voted to appoint Brown to the vacancy created by Chan's death. Brown's appointment to the Board will last until the end of Chan's term on January 2, 2023. At that time, the District 3 candidate elected in the upcoming election cycle will assume the District 3 seat on the County Board.[3] Brown is not a candidate in the upcoming election cycle.

In March 2022, the applicants applied for leave to sue Brown in quo warranto. They contend, among other things, that Brown is ineligible to serve on the Alameda County Board of Supervisors because he did not, and still does not, meet the legal residency requirements for holding that office. For that reason, they seek to remove Brown from his seat on the Board of Supervisors.

Brown urges us to deny the application, asserting that he is currently and was at the time of his appointment a resident of Alameda County District 3, and that he has therefore satisfied all applicable residency requirements for his position on the Board of Supervisors.

---

[2] Various other facts and circumstances surrounding the issue of Brown's legal residency are discussed in greater detail below.

[3] The primary election for the District 3 seat was held on June 7, 2022. If none of the candidates receives more than 50% of the vote in that election—as appears to be the case although votes are still being counted as this opinion is issued—there will be a run-off between the top two vote-getting candidates in the November 8, 2022 general election.

22-303

## ANALYSIS

Quo warranto is a civil action used, among other purposes, to challenge an incumbent public official's right or eligibility to hold a given public office.[4]  This form of action is codified in section 803 of the Code of Civil Procedure, which provides that "[a]n action may be brought by the attorney-general, in the name of the people of this state, upon his own information, or upon a complaint of a private party, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office . . . within this state."[5]

Where, as here, a private party seeks to pursue a quo warranto action in superior court, that party (known in this context as a relator, or proposed relator) must first apply for and obtain the Attorney General's consent to do so.  In determining whether to grant that consent, we do not attempt to resolve the merits of the controversy.  Rather, we consider (1) whether quo warranto is an available and appropriate remedy; (2) whether the proposed relator has raised a substantial issue of law or fact that warrants judicial resolution, and (3) whether authorizing the quo warranto action will serve the public interest.[6]  As discussed below, the answer to all three questions is "yes," and we therefore grant leave to sue.

## 1.  Availability of Quo Warranto Remedy

First, quo warranto is an available and appropriate remedy here.  The proposed relators contend that Brown—by failing to meet the legal residency requirements for the office to which he was appointed—is unlawfully usurping, intruding into, or holding public office on the Alameda County Board of Supervisors within the meaning of Code of Civil Procedure section 803.  We have repeatedly treated the alleged failure to meet legal residency requirements to hold a particular public office as cognizable grounds for a suit in quo warranto.[7]

---

[4] Code Civ. Proc., § 803; *Nicolopulos v. City of Lawndale* (2001) 91 Cal.App.4th 1221, 1225; 76 Ops.Cal.Atty.Gen. 157, 162-163 (1993).

[5] Code Civ. Proc., § 803; see *Rando v. Harris* (2014) 228 Cal.App.4th 868, 873; 97 Ops.Cal.Atty.Gen. 12, 14 (2014).

[6] *Rando v. Harris*, *supra*, 228 Cal.App.4th at pp. 868, 879; 72 Ops.Cal.Atty.Gen. 15, 20 (1989).

[7] See, e.g., 103 Ops.Cal.Atty.Gen. 33 (2020); 102 Ops.Cal.Atty.Gen. 56 (2019); 101 Ops.Cal.Atty.Gen. 70 (2018); 101 Ops.Cal.Atty.Gen., *supra*, at p. 42; 99 Ops.Cal.Atty.Gen. 74 (2016); 97 Ops.Cal.Atty.Gen., *supra*, at p. 12; 97 Ops.Cal.Atty.Gen. 1 (2014); 90 Ops.Cal.Atty.Gen. 82 (2007); 89 Ops.Cal.Atty.Gen. 44 (2006).

22-303

## 2. Substantial Issues Regarding Legal Eligibility to Serve

We next examine whether there are substantial issues of law or fact as to whether Brown has satisfied the legal residency requirements for serving on the Alameda County Board of Supervisors. We believe that there are. Alameda County is a charter county, and its charter and county administrative code set forth residency requirements for members of the county Board of Supervisors.[8] Section 4 of the charter provides in relevant part that each board member "must be an elector of the district which he/she represents [and] must reside therein during his/her incumbency[.]"[9] In addition, section 2.04.020 of the county administrative code states, in part, that each member "must be an elector of the district which he represents, must reside therein during his incumbency, and must have been such an elector for a[t] least one year immediately preceding his election, and that "[n]o supervisor shall, during the term for which he has been elected, or for one year thereafter, be eligible for appointment to any office or position carrying compensation and created by the Charter or by ordinance."[10] The questions concerning

---

[8] See Cal. Const., art. XI, § 4 (governing charter counties); *Penrod v. County of San Bernardino* (2005) 126 Cal.App.4th 185, 190 (explaining that Constitution recognizes "Home Rule," that is, "the right of the people of a charter county to create their own local government and define its powers within limits set out by the Constitution," quoting *Dibb v. County of San Diego* (1994) 8 Cal.4th 1200, 1218).

[9] Alameda County Charter, § 4. The provision reads in its entirety:

> The County of Alameda shall have a Board of Supervisors consisting of five members who shall have such executive, legislative and other powers as are now or may be hereafter specified by the Constitution or laws of the State of California or by this Charter. Each member must be an elector of the district which he/she represents, must reside therein during his/her incumbency, and shall be nominated and elected at the time and in the manner and for the term now or hereafter provided by general law. Each member of the Board of Supervisors shall receive as compensation for his/her services as such Supervisor the salary fixed by general law.

The Alameda County Charter and Administrative Code are searchable online at https://library.municode.com/ca/alameda_county/codes/administrative_code?nodeId=CH_BOSU (as of June 16, 2022).

[10] Alameda County Administrative Code, § 2.04.020. The full text of this provision is as follows:

4

Brown's eligibility concern these two requirements, and we analyze both in more detail below.

### *A Substantial Issue of Law Exists as to Whether the One-Year Prior Residency Requirement Applies to Brown*

Taking the one-year prior-residency requirement first, the parties disagree as to whether it applies to an appointee such as Brown. If it does, then it would disqualify Brown from holding office because he did not move to Alameda County until November 12, 2021, four days before his appointment to the Alameda County Board of Supervisors. But if the prior-residency requirement applies only to officials who are elected, and not to those who are appointed, then it has no effect on the question of Brown's eligibility to serve on the Board of Supervisors.

As mentioned, this prior-residency requirement comes from the county administrative code, which specifies that "[e]ach member" of the Board of Supervisors must have been an elector in the member's district for at least "one year immediately preceding his election."[11] Proposed relators maintain that this requirement literally applies to each member of the Board of Supervisors, regardless of whether the member is elected or appointed. As for the phrase "preceding his election," proposed relators note that the California Supreme Court has explained in comparable circumstances that, while the meaning of "elect" ordinarily refers to a determination by voters, it may also carry a broader meaning and refer to a person who is selected, chosen, or appointed.[12] Using the broader interpretation here would harmonize the terms of the provision and give full

---

The board consists of five members, one member elected from each of five supervisorial districts designated as provided by the Charter at the time and in the manner and for the terms provided by state law. Each member must be an elector of the district which he represents, must reside therein during his incumbency, and must have been such an elector for a least one year immediately preceding his election. No supervisor shall, during the term for which he has been elected, or for one year thereafter, be eligible for appointment to any office or position carrying compensation and created by the Charter or by ordinance.

(See https://library.municode.com/ca/alameda_county/codes/administrative_code?nodeId=CH_BOSU (as of June 16, 2022).)

[11] *Ibid.*

[12] *Barrett v. Hite* (1964) 61 Cal.2d 103, 105-106 (provision in state constitution stating conditions upon which incumbent judge is "re-elected" interpreted to include incumbent judges who were originally appointed to their offices).

22-303

effect to the provision's prefatory and seemingly inclusive subject, "[e]ach member."[13]  It would also avoid the peculiar result that the provision's general prohibition against supervisors holding another appointed county office or position carrying compensation during their term or for one year thereafter would not apply to appointees.  On the other hand, Brown argues that the reference to "election" at the end of the provision should be read according to the term's ordinary meaning as a determination made by the voters, thereby narrowing the provision's coverage to only elected members, so that the one-year prior residency requirement would not apply to appointed members like Brown.

In our view, the provision's reference to "each member," on the one hand, and to an "election," on the other hand, creates an ambiguity.[14]  It is not clear whether this provision applies to a member who did not stand for election.  While ambiguities are ordinarily resolved in favor of eligibility for holding office,[15] we have previously granted quo warranto applications when faced with eligibility requirements that contained ambiguous terms and there was a lack of authoritative guidance as to their meaning.[16]  We face a similar scenario here.  We therefore conclude that whether the one-year prior

---

[13] See *id.* at p. 106 ("The more reasonable interpretation of the amendment is that the word 're-elected' is used in its broader sense, i.e., that the county clerk or registrar is to declare that the incumbent is again chosen or selected to hold the office of judge.  As so construed not only does the word have an acceptable meaning but also the term 'incumbent' is given full effect and all portions of the amendment are harmonized.")

[14] *Eel River Disposal & Resource Recovery, Inc. v. County of Humboldt* (2013) 221 Cal.App.4th 209, 225 ("Ambiguity exists when a statute is capable of being understood by reasonably well-informed persons in two or more different senses").

[15] See *Helena Rubenstein Internat. v. Younger* (1977) 71 Cal.App.3d 408, 418.

[16] See, e.g., 101 Ops.Cal.Atty.Gen. 24 (2018) (meaning of eligibility requirement for water purveyor to be "representative of a city" presented substantial issue for judicial resolution); 76 Ops.Cal.Atty.Gen., *supra*, at p. 157 (meaning of disqualification provision in city charter referring to "salaried officer" presented substantial issue for judicial resolution).

6

residency requirement applies to Brown presents a substantial issue of law warranting judicial resolution.[17]

### *Substantial Issues of Law and Fact Exist as to Brown's Residency During the Term of His Incumbency*

As a separate and independent basis for granting this application, we find that there are also substantial questions about whether Brown satisfies the residency requirements that apply *during* his term of office. The County Charter provides in relevant part that each board member "must be an elector of the district which he/she represents [and] must reside therein during his/her incumbency[.]"[18] The parties disagree about whether Brown has effectively changed his legal residence from Contra Costa County to Alameda County's District 3 for the purposes of this requirement.

In this context, an "elector" refers to a person who is a citizen at least 18 years old and is a "resident" of a precinct in this State.[19] And as the California Supreme Court has explained, statutory residency requirements—even those that use the unmodified and more general terms "resident" or "residence"—refer to the legal concept known as "domicile."[20] A domicile is a person's fixed habitation where the person intends to remain, and intends to return whenever absent.[21] In other words, "[i]t is the place where

---

[17] Proposed relators also assert that a 30-day prior-residency requirement set forth in Government Code section 25041 applies to Brown's pre-appointment period. We disagree. It is doubtful that this provision of general state law would govern in a charter county, such as Alameda County, whose charter and administrative code provides for the qualifications and manner of selection of its county supervisors. (Cal. Const., art. XI, § 4(g).) In any event, Government Code section 25041 unambiguously applies only to elections by voters (and not appointments) because it ties the 30-day requirement (expressed as a voter-registration requirement) to a deadline for filing documents in elections decided by voters. (See Gov. Code, § 25041 ["[E]ach member shall have been a registered voter of the district which he seeks to represent for at least 30 days immediately preceding the deadline for filing nomination documents for the office of supervisor."].)

[18] Alameda County Charter, § 4. See also Alameda County Administrative Code, § 2.04.020 (each member "must be an elector of the district which he represents [and] must reside therein during his incumbency").

[19] Elec. Code, § 321.

[20] *Walters v. Weed* (1988) 45 Cal.3d 1, 7; *Smith v. Smith* (1955) 45 Cal.2d 235, 239; 85 Ops.Cal.Atty.Gen. 90, 92 (2002); Elec. Code, § 349(a).

[21] Elec. Code, § 349(b).

7

one remains when not called elsewhere for labor or other special or temporary purpose, and to which he or she returns in seasons of repose."[22] A residence, in contrast, "connotes any factual place of abode of some permanency, more than a mere temporary sojourn."[23]

For this reason, a person may have multiple residences, but may have only one domicile at any given time.[24] Thus, a domicile "cannot be lost until another is gained."[25] Once established, a domicile is presumed to continue until it is shown that a new domicile has been acquired.[26] To change domicile requires a "union of act and intent."[27] A person must intend to acquire a new domicile and physically move there to effectuate the change.[28] The party asserting a change in domicile—here, Brown—has the burden of proving such a change.[29]

The determination of domicile is a mixed question of fact and law which may involve many factors, such as an official's acts and declarations, mailing address, voter registration, car registration, tax returns, and where a homeowner's or renter's credit is taken.[30] But the critical element is intent.[31] The domicile of a person's family is

---

[22] Gov. Code, § 244(a); see *Smith v. Smith*, *supra*, 45 Cal.2d at p. 239 (explaining that "in our codes 'residence' is used as synonymous with domicile in the following statutes: sections 243 and 244 of the Government Code, giving the basic rules generally regarded as applicable to domicile").

[23] *Ibid.*

[24] Elec. Code, § 349(b); Gov. Code, § 244(b).

[25] Gov. Code, § 244(c).

[26] *Walters v. Weed*, *supra*, 45 Cal.3d at pp. 7-9.

[27] Gov. Code, § 244(f).

[28] Elec. Code, § 2024 ("The mere intention to acquire a new domicile, without the fact of removal avails nothing, neither does the fact of removal without the intention").

[29] *DeMiglio v. Mashore* (1992) 4 Cal.App.4th 1260, 1268; 90 Ops.Cal.Atty.Gen., *supra*, at p. 86; 85 Ops.Cal.Atty.Gen., *supra*, at p. 93.

[30] See, e.g., 103 Ops.Cal.Atty.Gen., *supra*, at p. 39; 101 Ops.Cal.Atty.Gen. 16, 18-19 (2018); 73 Ops.Cal.Atty.Gen. 197, 209-210 (1990); 72 Ops.Cal.Atty.Gen., *supra*, at p. 22; 72 Ops.Cal.Atty.Gen. 8, 14 (1989).

[31] *Id*.

generally deemed to be that person's domicile.[32] Thus, the Elections Code provides that "[i]f a person has a family fixed in one place, and the person does business in another place, the former is the person's place of domicile."[33] However, if a person "has taken up an abode in another place *with the intention of remaining*, and the person's family does not so reside with the person, the person is a domiciliary where the person has so taken up the abode."[34] As to one's "intent to remain" in this context, our Supreme Court has recognized that the "acquisition of a new domicile is generally understood to require an actual change of residence accompanied by the intention to remain either permanently or for an indefinite time without any fixed or certain purpose to return to the former place of abode."[35]

With these principles in mind, we now turn to the question of whether Brown has maintained a domicile in District 3 "during his[] incumbency," as required by the County Charter.[36] On November 12, 2021, Brown changed his voter registration residence address from the Walnut Creek family home, which Brown and his wife had purchased in 2010, to an apartment located in Oakland, within Alameda County's District 3. In his sworn statement submitted with his opposition to the present application, Brown states that, on that same date, he also changed his address with the Department of Motor Vehicles and physically moved into the Oakland apartment. Brown explains that a friend was already leasing the one-bedroom apartment, but was staying elsewhere, and agreed that Brown could stay in his apartment. Brown and his friend executed a lease "addendum" adding Brown as a resident, along with his friend, who remained on the lease. Brown did not assume the lease, which specified a month-to-month tenancy, on his own.[37] Brown also states that he changed his address for county records and "medical/healthcare items" and to this apartment's address.

Brown recounts that, on December 11, 2021, he moved to another one-bedroom apartment in the same Oakland apartment complex (and still within District 3), and

---

[32] Elec. Code, § 2027 ("The place where a person's family is domiciled is his or her domicile unless it is a place for temporary establishment for his or her family or for transient objects").

[33] Elec. Code, § 2028.

[34] *Id.* (emphasis added).

[35] *DeYoung v. De Young* (1946) 27 Cal.2d 521, 524; see *In re Glassford's Estate* (1952) 114 Cal.App.2d 181, 186.

[36] Alameda County Charter, § 4.

[37] The document that Brown provided in support of his sworn statement shows his friend's and Brown's signatures, as residents; it shows no signature on behalf of the apartment management company.

9

produced a lease agreement signed by him and the apartment management company. The lease term is for 13 months, beginning on December 10, 2022, and ending on January 9, 2023, one week after the term of Brown's appointment expires on January 2, 2023. Shortly after the move to the second apartment, Brown states that he changed his voter registration to list the new address and did the same for county records. He states that he pays for the water and trash for this address and that he furnished the apartment with some items from his Walnut Creek house, some items he bought from his friend in the prior apartment, and some new items.[38]

Since his move to the district, apart from special occasions such as holidays, Brown states that he typically spends approximately six nights a week in the district, and one night a week with his family at their home in Walnut Creek. He also states that he has regularly spent three afternoons and evenings (Wednesdays, Fridays, and Sundays) at the home in Walnut Creek; that his wife and children have visited and once stayed the night at the Oakland apartment; and that his younger child often stays with him there for part of the weekend.

Brown describes his intent regarding his residency as follows: "My intention when I moved to [my friend's] Oakland apartment was to make the Third District my permanent home for now." He also states that he currently considers the second apartment in Oakland to be his home and adds:

> I do not know what awaits me after my term as Third District Supervisor ends, but I am certain I will continue living in Oakland at least until then. And given my ties to the community which date back to 1992, I would like to continue serving the community in some capacity. I would be happy to stay in Oakland after my term ends in January.

As for his family, Brown states that they will not be moving to Oakland, but will remain permanently where they are, at the Walnut Creek residence.

We have no reason to doubt the sincerity of Brown's acts and stated intent to make the Third District his "permanent home for now" and at least through the end of his appointed term on the Board of Supervisors. But as mentioned above, a change in domicile requires both a physical presence and an intent to remain at the new location

---

[38] Brown produced electricity bills for the apartment that are in his name and show usage during December through April. He also produced evidence of a February 2, 2022 change of address for his car registration (for the car he says he normally drives), and a driver's license issued on February 3, 2022, using this address.

"either permanently or for an indefinite time without any fixed or certain purpose to return to the former place of abode."[39]

Based on the limited facts before us, we cannot determine whether Brown's acts and declarations are enough to satisfy the "intent to remain" element of establishing one's domicile. For example, although other conclusions are possible, it might reasonably be inferred that the circumstances of Brown's move indicate an intent to domicile in Oakland for a fixed but temporary period of time, with the eventual intent of returning to Walnut Creek.[40] Would such a scenario comport with the legal principles governing an asserted change of domicile? Again, we express no view as to how a court would ultimately adjudicate this question.[41] We merely conclude that there are substantial issues of law and fact surrounding Brown's domicile during the term of his incumbency, and these issues warrant a judicial resolution.

## 3. The Public Interest Favors Authorizing the Proposed Action

Finally, we conclude that it is in the public interest to have this matter conclusively resolved through the prescribed legal process of quo warranto. We generally view the need for judicial resolution of a substantial question of fact or law as a sufficient "public purpose" to warrant granting leave to sue, absent countervailing circumstances.[42]

---

[39] *DeYoung v. De Young*, *supra*, 27 Cal.2d at p. 524, italics added; see *In re Glassford's Estate*, *supra*, 114 Cal.App.2d at p. 186. "Permanent" is defined as "continuing or enduring without fundamental or marked change: stable." (Webster's 11th Collegiate Dict. (2020) p. 922.) "Indefinite" is defined as "having no exact limits." (*Id.* at p. 632.)

[40] We note here that we view this inference as a permissible one, but not the only one, given the currently known facts and circumstances. In addition, more pertinent information might be adduced in connection with the superior court's consideration of this matter.

[41] As we stated in an earlier opinion, "In acting upon an application for leave to sue in the name of the people of the State, it is not the province of the Attorney General to pass upon the issues in controversy, but rather to determine whether there exists a state of facts or question of law that should be determined by a court in an action quo warranto; that the action of the Attorney General is a preliminary investigation, and the granting of the leave is not an indication that the position taken by the relator is correct, but rather that the question should be judicially determined . . . ." (12 Ops.Cal.Atty.Gen. 340, 341 (1949).)

[42] 98 Ops.Cal.Atty.Gen. 94, 101 (2015); 95 Ops.Cal.Atty.Gen. 77, 87 (2012).

Brown contends that the shortness of time left on his term, which will expire in early January 2023, and the fact that he is not running for a subsequent term on the Board of Supervisors, are countervailing circumstances such that granting the present application would not serve the public interest. We disagree. Although we cannot control how long it takes for a court to adjudicate a quo warranto proceeding, a court might well resolve this matter before January 2023.[43] Additionally, we believe that the public interest would benefit from obtaining clarity on (1) whether the Alameda County Administrative Code requires each member of the Board of Supervisor to satisfy a one-year prior residency requirement, and (2) whether the acts and declarations here are sufficient to establish domicile within the particular district.

Accordingly, the application for leave to sue in quo warranto is GRANTED.

---

[43] We note that we normally do not reject a quo warranto application based solely on timing considerations. (97 Ops.Cal.Atty.Gen., *supra*, at p. 19.) Indeed, we have recently granted quo warranto applications with less time remaining on the challenged terms. (See, e.g., 105 Ops.Cal.Atty.Gen. 65, 68 (2022) (granting leave to sue on substantial question of law with two months remaining on challenged term); 105 Ops.Cal.Atty.Gen. 69, 74-75 (2022) (less than six months remaining on challenged terms).)