[No. D045266. Fourth Dist., Div. One. Aug. 22, 2005.]

WILLIAM B. KOLENDER, as Sheriff, etc., Plaintiff and Appellant, v. SAN DIEGO COUNTY CIVIL SERVICE COMMISSION, Defendant and Respondent;
EDWARD SALENKO, Real Party in Interest and Respondent.

COUNSEL

Robert P. Faigin and Sanford A. Toyen for Plaintiff and Appellant.

Bobbitt Pinckard, Everett L. Bobbitt and Richard L. Pinckard for Real Party in Interest and Respondent.

OPINION

**O'ROURKE, J.**—San Diego County Sheriff, William B. Kolender (the Sheriff), filed a petition for writ of mandate in the superior court and requested it vacate the San Diego County Civil Service Commission's (the Commission) order modifying Sergeant Edward Salenko's penalty from termination to a 90-day suspension, reinstatement and demotion to the rank of deputy sheriff. (Code Civ. Proc., § 1094.5.) The trial court denied the petition because it found substantial evidence supported the Commission's conclu-

sions. The Sheriff contends we should reverse the trial court's decision because (1) there was insufficient evidence to support it and (2) the Commission should have given substantial deference to his department's factual findings.

## FACTUAL AND PROCEDURAL SUMMARY

The Sheriff's Department assigned Salenko to investigate Deputy Chris Pangalos for possible abuse of sick leave. On September 14, 2002, Pangalos requested time off from work later in the evening because he wanted to socialize with visiting family. Pangalos told Sergeant Leroy Draheim he would call in sick if he did not get the time off. Draheim informed Pangalos he would receive permission if a deputy were found to cover for him. That evening, Pangalos telephoned Lieutenant David McNary and stated a different reason for the time off, which was his stepdaughter's illness. Pangalos did not work that evening.

Salenko's commander reviewed Salenko's report and sought clarification regarding whether McNary had approved Pangalos's sick leave. Salenko's revised report stated "I asked Lt. McNary if he approved the use of sick time, and he replied "yeah." At the Commission hearing, it was established Salenko never asked McNary during a formal interview whether he approved the sick leave. Moreover, Salenko did not reinterview McNary for the revised report.

Another discrepancy in Salenko's report related to the specific time, date, place and circumstances for an interview he allegedly conducted with Sergeant Brenna Madsen, who was initially assigned to investigate Pangalos's abuse of sick leave.[1] Madsen countered she spoke to Salenko about his investigation

---

[1] Salenko's report stated:

"On October 9, 2002, at 0500 hours, I interviewed Sgt. Brenna Madsen. The interview was held in the Central Sergeant's office of the George Bailey Detention Facility. There were no other persons present during the interview. The interview was not tape-recorded.

"Sgt. Madsen told me that Deputy Pangalos was scheduled to work his regular shift on the evening of September 14, 2002. On the morning of the 14th, he asked Sgt. Draheim if he could "comp off" that evening. Sgt. Draheim told him he could, if he could find a replacement deputy. Deputy Pangalos said he would just call in sick, if he could not comp off. Deputy Pangalos called in sick at 1326 hours on September 14. Sgt. Draheim reported his conversation to Lt. McNary. Lt. McNary directed Sgt. Madsen to file a department-originated complaint.

"Sgt. Madsen interviewed Deputy Pangalos in a preliminary investigation. This interview was tape-recorded. The recorder apparently malfunctioned and the tape is blank. Sgt. Madsen does not recall the specifics of the interview and she did not take notes."

only twice, for short periods of time, and never under the precise circumstances described in his report. Moreover, Salenko never asked her regarding her interview with Pangalos, the details of which she had not forgotten.

The Sheriff considered Salenko's report unprofessional because it referred to formal interviews he never conducted and misattributed statements to two members of the Sheriff's office.[2] The Sheriff subsequently terminated Salenko for failure to meet standards (causes I and II); poor departmental reports, and untruthfulness (causes II and III); and acts incompatible or inimical to the public service (cause IV) because of the two specific discrepancies in Salenko's report.

Salenko appealed to the Commission, which disagreed with the Sheriff's findings concerning the truthfulness causes, but agreed regarding all other causes, with certain caveats not relevant here. The Commission found Salenko's report was "admittedly abysmal" and "showed significant carelessness." Nonetheless, the Commission concluded although Salenko's "inaccuracies were egregious, they did not appear intentional. There appeared to be no motive for [Salenko] to be untruthful and the inaccuracies pertained to immaterial issues."

## DISCUSSION

### I.

### A.

■ This case involves the reasonable inferences to be drawn from Salenko's explanations for the two discrepancies in his report, which Salenko himself accepts was substandard. The Sheriff urges us to infer Salenko was untruthful, and not merely sloppy, disorganized and forgetful, as Salenko successfully argued before the Commission. The hearing officer was in the best position to observe the witnesses' demeanors and assess their credibility. (*County of Los Angeles v. Civil Service Com.* (1995) 39 Cal.App.4th 620, 633 [46 Cal.Rptr.2d 256] [we review the administrative record as a whole for substantial evidence to support the judgment]; *Los Angeles County Office of the District Attorney v. Civil Service Com.* (1997) 55 Cal.App.4th 187, 199 [63 Cal.Rptr.2d 661] [" '[W]hen two or more inferences can reasonably be

---

[2] The specific charges were brought under section 7.2 (a), (d) and (s) of the Commission as related to the Sheriff's policy and procedure, sections 2.30, 2.41 and 2.46.

deduced from the facts, a reviewing court is without power to substitute its deductions for those of the [trier of fact]' "].)

Salenko defended against the charges of untruthfulness by insisting he did not intentionally seek to mislead his superiors. He also testified at the Commission hearing that his report was accurate regarding the material aspects of the investigation. Specifically, Salenko explained that he informally asked McNary whether he considered it "okay" for Pangalos to take sick leave, and McNary answered, "Yeah." Salenko disavowed his specific description of the Madsen interview in his report and claimed he had forgotten the exact circumstances or date of his interview with her. He also claimed he possibly confused the Madsen interview with one he conducted with another deputy, or with information found in the complaint against Pangalos.

■ We defer to the trier of fact on issues of credibility, and conclude substantial evidence supported the hearing officer's decision to credit Salenko's explanation for his inaccurate and unprofessional report. Salenko testified he was disorganized with his notes while conducting the investigation; he lost track of how many individuals he spoke with in the course of his investigation, and who said what to him. (*Oldham v. Kizer* (1991) 235 Cal.App.3d 1046, 1065 [1 Cal.Rptr.2d 195].) "[N]either conflicts in the evidence nor ' "testimony which is subject to justifiable suspicion . . . justif[ies] the reversal of a judgment, for it is the exclusive province of the [trier of fact] to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.' " [Citations.] Testimony may be rejected only when it is inherently improbable or incredible, i.e., " 'unbelievable *per se*,' " physically impossible or " 'wholly unacceptable to reasonable minds.' " (*Ibid.*)

### B.

■ To the extent the Sheriff appeals the Commission's modification of the discipline, we conclude there was no abuse of discretion. The Commission found in mitigation that Salenko was a 17-year veteran who had received mostly positive reviews; he apparently lacked training regarding proper documentation, having only completed three reports before, and the Pangalos report was the most challenging one he had completed. (*County of Los Angeles v. Civil Service Com., supra,* 39 Cal.App.4th 620, 634 [46 Cal.Rptr.2d 256], quoting *Lowe v. Civil Service Com.* (1985) 164 Cal.App.3d 667, 677 [210 Cal.Rptr.

673].) ["If reasonable minds may differ with regard to the appropriate disciplinary action, there is no abuse of discretion"].)

## II.

 The Sheriff contends the Commission should have reviewed his department's findings of fact for substantial evidence, which he claims is the standard of review consistent with his constitutional autonomy to carry out his tasks. However, as the Sheriff acknowledges, both the Government Code and the San Diego County Charter are silent regarding what deference the Commission ought to give the Sheriff's findings, and both authorize the Commission to affirm, modify or revoke the Sheriff's termination orders.[3] We have been directed to no statute or regulation that specifies the appropriate standard of review of the Sheriff's findings, and we have found none.

 Contrary to the Sheriff's contention, the Commission's review function effects no derogation or infringement on the Sheriff's constitutionally conferred powers, which relate merely to the provision of inmate labor. (Cal. Const., art. XIV, § 5 ["The Director of Corrections or any county Sheriff or other local government official charged with jail operations, may enter into contracts with public entities, nonprofit or for profit organizations, entities, or businesses for the purpose of conducting programs which use inmate labor"].) Other constitutional references to the office of sheriff provide only for an "elected sheriff" and the Attorney General's authority over the sheriff.[4] (See *Beck v. County of Santa Clara* (1988) 204 Cal.App.3d 789 [251 Cal.Rptr. 444] [comprehensively discussing the constitutional and statutory powers of sheriffs].) Here, whatever deference the Commission actually gave to the Sheriff's findings, its power to modify a termination order is sufficiently broad to permit the result it reached. We decline the Sheriff's invitation to read into Government Code, section 31108 a standard of review

---

[3] Government Code, section 31108, subdivision (a)(3) states, "Within 20 days from the filing of the appeal the commission shall commence a hearing, and either affirm, modify, or revoke the order. The appellant may appear personally, produce evidence, and have counsel and a public hearing." The San Diego County Charter, section 904.1 states, "The Commission is the administrative appeals body for the County in personnel matters authorized by this Charter. Upon appeal, the Commission may affirm, revoke or modify any disciplinary order, and may make any appropriate orders in connection with appeals under its jurisdiction."

[4] California Constitution, article XI, section 1, subdivision (b) states, "The legislature shall provide for county powers, an elected county sheriff, an elected district attorney, an elected assessor, and an elected governing body in each county." California Constitution, article XI, section 4, subdivision (c) states that county charters shall provide for "[a]n elected sheriff, an elected district attorney, an elected assessor, other officers, their election or appointment, compensation, terms and removal." California Constitution, article V, section 13 states in relevant portion, "The Attorney General shall have direct supervision over every district attorney and sheriff and over such other law enforcement officers as may be designated by law, in all matters pertaining to the duties of their respective offices."

for the Sheriff's investigation that the Legislature did not specify. (See *San Francisco Unified School Dist. v. San Francisco Classroom Teachers Assn.* (1990) 222 Cal.App.3d 146, 149 [272 Cal.Rptr. 38] ["[A] court engaged in statutory construction cannot create exceptions, contravene plain meaning, insert what is omitted, omit what is inserted, or rewrite the statute]."])

██ Here, all indications are that the Commission should independently review the facts and law, and the Sheriff's findings and final disciplinary order are not due substantial deference. On behalf of the Commission, a hearing officer, who is assisted by a legal adviser, holds a full evidentiary hearing to ascertain the factual basis for the Sheriff's charges. Both the office and the terminated deputy may subpoena witnesses, who may be represented by counsel. The witnesses testify under oath and may undergo cross-examination. The parties are invited to make opening and closing arguments. The hearing officer reviews documentary evidence, which typically includes the Sheriff's order of termination and charges; the department's policies and procedures; relevant aspects of the terminated employee's personnel files; the San Diego County Charter; and the rules of the Commission.[5]

The Commission's authority to "modify" the Sheriff's disciplinary order under Government Code, section 31108 is more consistent with an independent review than with substantial evidence review of the Sheriff's finding. The Commission modifies by using its own judgment to evaluate the facts and the law and reach a conclusion that might differ from the Sheriff's. Otherwise, there would be no need for the statute to authorize the Commission's adjudicatory review, and the Commission could simply exist to rubberstamp the Sheriff's disciplinary orders. The legislative history of Government Code, section 31108 is somewhat instructive. When its predecessor was modified in 1943, the Commission's findings became binding on the county employer, and not simply advisory as was previously the case. The new version of the statute strengthened the Commission's oversight role, and placed ultimate authority with respect to punitive action in the Commission. (Stats. 1943, ch. 1044, § 1, p. 2979.)

The Sheriff cites several cases for his cursory argument that, "The functional independence of the Sheriff from the County Board of Supervisors is well established in California law." This argument overlooks that most of the cases cited deal with the Sheriff's statutory powers to control the jails and perform other specific functions. The cases are unavailing because none

---

[5] It does not appear from the record that the hearing officer routinely receives into evidence any of the testimony and reports developed during the Sheriff's disciplinary proceedings; rather, it seems only a summary of the Sheriff's findings and final disciplinary order is forwarded to the hearing officer. Accordingly, the Commission would be hobbled by a paucity of evidence if it were to review the Sheriff's findings for substantial evidence.

addresses the precise issue of the scope of the Commission's grant of authority to review the Sheriff's fact findings.[6]

■ The Sheriff also relies on *Ishimatsu v. Regents of University of California* (1968) 266 Cal.App.2d 854, 862 [72 Cal.Rptr. 756], which is plainly inapposite because the University of California operates under a different and broader constitutional grant of authority than that accorded to the Sheriff. *Ishimatsu* holds that, "where the statewide agency is delegated quasi-judicial power by the Constitution, the reviewing court is limited to determining whether there was substantial evidence supporting the agency's decision." (*Id.* at p. 862.) In *Ishimatsu*, an at-will university librarian was terminated because she lacked supervisorial qualifications. She appealed after she was accorded a meaningful grievance procedure by the university, a statewide administrative agency within the meaning of Government Code, section 11000. (*Ishimatsu,* at pp. 860–863.) *Ishimatsu* itself recognizes that California Constitution, article IX, section 9, grants the Regents virtually exclusive powers to operate, control and administer the university.[7] The policies and procedures the Regents adopt have the force and effect of statute. (*Regents of University of California v. City of Santa Monica* (1978) 77 Cal.App.3d 130, 135 [143 Cal.Rptr. 276]; see also *Kim v. Regents of University of California* (2000) 80 Cal.App.4th 160, 166 [95 Cal.Rptr.2d 10] [describing the few limitations on the Regents' powers].) By contrast, as explained, *ante,* the California Constitution does not grant the Sheriff any quasi-judicial statewide constitutional powers whatsoever. (*Penrod v. County of San Bernardino* (2005) 126 Cal.App.4th 185, 190 [23 Cal.Rptr.3d 717] ["The sheriff is a county officer, not a state official"].)

---

[6] The cases the Sheriff cites include *Brandt v. Board of Supervisors* (1978) 84 Cal.App.3d 598, 601 [147 Cal.Rptr. 468] [affirming that by statute, the Sheriff is authorized to operate the county jails]; *Hicks v. Board of Supervisors* (1977) 69 Cal.App.3d 228, 232, 241 [138 Cal.Rptr. 101] [holding that the board of supervisors has no power to control the district attorney's performance of investigative and prosecutorial functions, and could not do so indirectly by transferring those functions to the jurisdiction of the sheriff-coroner]; *Board of Supervisors v. Superior Court* (1995) 33 Cal.App.4th 1724, 1740 [39 Cal.Rptr.2d 906] [dealing with the distinction to be drawn between the board of supervisors' power to appropriate county funds and the sheriff's power to manage the expenditure of the appropriated funds]; *Venegas v. County of Los Angeles* (2004) 32 Cal.4th 820, 834 [11 Cal.Rptr.3d 692, 87 P.3d 1] ["[T]he county board of supervisors has no direct control over a sheriff's performance of law enforcement functions"].

[7] California Constitution, article IX, section 9 states, "The University of California shall constitute a public trust, to be administered by the existing corporation known as 'The Regents of the University of California,' with full powers of organization and government, subject only to such legislative control as may be necessary to insure the security of its funds and compliance with the terms of the endowments of the university and such competitive bidding procedures as may be made applicable to the university by statute for the letting of construction contracts, sales of real property, and purchasing of materials, goods, and services."

## DISPOSITION

The judgment is affirmed. Real party in interest and respondent Edward Salenko is awarded costs on appeal.

McConnell, P. J., and Haller, J., concurred.