Filed 10/15/14; pub. & mod. order 10/24/14 (see end of opin)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| JOSE QUINTANAR, | |
| Plaintiff and Respondent, | E058232 |
| v. | (Super.Ct.No. RIC1119087) |
| COUNTY OF RIVERSIDE et al., | **OPINION** |
| Defendants and Appellants. | |

APPEAL from the Superior Court of Riverside County. Sharon J. Waters, Judge. Reversed.

Ferguson, Praet & Sherman and Anthony M. Snodgrass for Defendants and Appellants.

Stone Busailah, Michael P. Stone, Muna Busaila, and Robert Rabe for Plaintiff and Respondent.

The County of Riverside and the Riverside County Sheriff's Department (collectively Department) demoted Deputy Jose Quintanar as a result of an incident in which Quintanar allegedly used excessive force. Pursuant to the applicable Memorandum of Understanding (MOU), Quintanar filed an administrative appeal. This triggered an evidentiary hearing before an impartial hearing officer. The hearing officer agreed that Quintanar had used excessive force and upheld the demotion.

Quintanar then filed a petition for writ of mandate. The trial court, sua sponte, questioned whether the hearing officer was required to exercise independent judgment with respect to the nature of the discipline to be imposed, and if so, whether he had, in fact, done so. It remanded the matter to the hearing officer with directions to clarify whether he had exercised independent judgment. On receiving his reply, it determined that he had not exercised independent judgment and it issued a writ commanding him to do so.

The Department appealed. We agree with the trial court that, under the MOU, the hearing officer was required to exercise independent judgment not only with respect to whether there were grounds for discipline, but also with respect to the nature of the discipline. We disagree with the trial court's conclusion, however, that the hearing officer's failure to use independent judgment was prejudicial. The hearing officer did indicate that, while he did not believe that he was required to exercise his independent judgment, the exercise of his independent judgment would not have changed the outcome.

2

Hence, we will reverse.

I

FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Memorandum of Understanding*.

The 2008-2011 MOU between the Riverside Sheriffs' Association, Inc. and the County of Riverside provided: "Any employee may appeal any disciplinary action taken against the employee."

An appeal is to be heard by a hearing officer. The hearing officer is selected from a list of persons previously agreed to by both parties. The hearing officer must hold an evidentiary hearing, at which both sides have the right to call and examine witnesses, to cross-examine the witnesses for the other side, and to introduce exhibits. After the hearing, the hearing officer must "submit written findings of fact, conclusions of law, and the decision . . . . The decision of the Hearing Officer shall be final subject to the right of either party to seek judicial review under Section 1094.5 of the California Code of Civil Procedure."

"The Hearing Officer may sustain, modify, or rescind an appealed disciplinary action . . . ." "If the Hearing Officer finds that the disciplinary action was appropriate, the action shall be sustained."

B.     *Quintanar's Demotion*.

Quintanar worked for the Sheriff's Department of the County of Riverside as a correctional deputy.  On September 28, 2009, he was involved in an incident in which he allegedly used excessive force against an arrestee.

The Department conducted an investigation.  The investigation included interviews with eyewitnesses, including Quintanar, and the review of a video of the incident.  The investigation concluded that Quintanar had, in fact, used excessive force.

On January 11, 2010, the Department sent Quintanar a notice of intent to demote him based on inefficiency or negligence, willful violation of an employee regulation, and conduct adversely affecting department operations.  Quintanar requested a *Skelly* hearing;[1] one was held on February 23, 2010.  On February 24, 2010, the Department demoted Quintanar, effective March 11, 2010.

C.     *Proceedings Before the Hearing Officer*.

Pursuant to the MOU, Quintanar filed an administrative appeal.  The key issue in the administrative appeal, as stipulated by the parties, was, "Was there just cause to demote . . . Quintanar?"

The hearing officer held a three-day evidentiary hearing.  During the hearing, Chief Deputy Steve Thetford testified that he was the one who made the decision to

---

[1]     A *Skelly* hearing is an opportunity for the employee to respond to the decision maker regarding the charges against him or her.  (*Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194, 206.)

demote Quintanar. He had considered the Department's "disciplinary matrix," which provides "generic guidelines" for the appropriate level of discipline. For example, for "use of force with injury," as in this case, it provides for an 80-hour suspension.[2] Nevertheless, he decided to demote Quintanar instead, because, in his view, "the egregious nature" of Quintanar's use of force made it "not an act that . . . [an officer of Quintanar's rank] should be conducting."

On September 21, 2011, the hearing officer denied the administrative appeal. He agreed that Quintanar had used excessive force.

Regarding the appropriate discipline, the hearing officer stated: "[I]t is not appropriate to substitute my judgment for that of the decision maker. Rather, my function is to consider whether the imposed discipline is arbitrary and/or is within the range of discipline that would be reasonable for the proven misconduct."

He continued: "The disciplinary matrix should be given great consideration and deference since it is the Department's notice to employees concerning the discipline that might be imposed for certain types of misconduct." He noted that discipline outside the disciplinary matrix, standing alone, might be deemed arbitrary. He also noted, however, that Chief Deputy Thetford had explained why he had decided to demote Quintanar. He concluded that Quintanar's own inconsistent testimony "mitigated against any inclination

---

[2] It is not entirely clear whether the disciplinary matrix actually prescribed an 80-hour *reduction in compensation* or an 80-hour *suspension*. For purposes of our opinion, however, the distinction is not significant.

that may have otherwise existed to reduce the severity of the discipline" because it "demonstrated his lack of understanding of the inappropriateness of his misconduct and his failure to take responsibility for his actions."

D.      *Proceedings in the Trial Court*.

Quintanar filed a petition for writ of mandate, alleging, among other things, that the discipline imposed was excessive.

At the argument on the petition, the trial court raised the issue sua sponte of whether the hearing officer erred by concluding that he should not exercise independent judgment regarding the appropriate discipline.

Counsel for Quintanar, adopting the trial court's suggestion, argued that the hearing officer had indeed erred by failing to exercise his independent judgment. Counsel for the Department argued, "I don't believe his function is to make his own findings. I think his function is to determine whether the Department's action was arbitrary, capricious, or unreasonable." However, he also suggested "remand[ing] the matter back to the hearing officer specifically for the questions that the Court has inquired upon." "I think the first threshold issue is whether he did [exercise his independent judgment]. . . . If he did do that, I think that pretty much ends the inquiry. If he did not do that, then he can expand further and tell us, okay, I didn't do it before, but I've done it now, and . . . give us a more definitive answer."

The trial court therefore entered a judgment granting a writ of mandate. It directed the hearing officer to "clarify" whether he believed he was allowed to use his

6

independent judgment and whether he had, in fact, used his independent judgment.  It further directed him, if he had not used his independent judgment, "to do so now and render a new decision."

The hearing officer responded, "My process of deciding the issue of whether the Department had just cause to demote Mr. Quintanar involved two steps.  The first was to hear the case de novo and make the determination on the merits as to whether Mr. Quintanar engaged in the alleged misconduct. . . .

"The next step . . . was to determine whether there was just cause for the demotion . . . .  [A]s an arbitrator, I do not 'impose' discipline but rather, review the discipline imposed by the decision maker and apply the concept of just cause . . . .

"There are often several possible disciplines that a decision maker can impose for misconduct and in collective bargaining cases, it is relatively well accepted that the arbitrator should not substitute his/her view for that of the decision maker unless the discipline that is imposed is outside the range of what would be reasonable . . . .

"In my analysis . . . , I noted that the . . . disciplinary matrix should be given great deference . . . .  I gave my independent analysis concerning why I did not think there was sufficient reason to reduce the demotion to an 80-hour suspension.  In that regard, I noted . . . that there were inconsistencies in Mr. Quintanar's testimony, that he demonstrated a lack of understanding of the inappropriateness of his misconduct and that he failed to take responsibility for his misconduct. . . .

"For the reasons discussed above, it is my opinion that I independently analyzed and assessed the discipline . . . .

"If the Court is asking me if I would have imposed the demotion based on my independent review and analysis, I cannot answer that question since that is not how I view my role as arbitrator.  As discussed above, I made an independent assessment and considered the decision maker's imposition of discipline within my assessment of the record and the context of just cause and determined that there was just cause for Mr. Quintanar's demotion."

Thereafter, the trial court found that the hearing officer "did not use his independent judgment . . . ."  It entered a new judgment granting a new writ of mandate, remanding the matter to the hearing officer "so he may properly exercise his decision making power under the [MOU]" and ordering the hearing officer to "use his independent judgment . . . and render a new decision . . . ."

The County filed a timely notice of appeal.

II

APPEALABILITY

The trial court's second judgment granting a supplemental writ of mandate is appealable.  (*Talmo v. Civil Service Com.* (1991) 231 Cal.App.3d 210, 225-226.)  Even assuming it is not, however, we have discretion to treat a failed appeal as a petition for a writ of mandate (*Olson v. Cory* (1983) 35 Cal.3d 390, 400-401), and we would do so in this case.

8

III

THE HEARING OFFICER WAS REQUIRED

TO EXERCISE INDEPENDENT JUDGMENT AS TO DISCIPLINE

The Department contends that the trial court erred by ruling that the hearing officer was required to exercise independent judgment regarding the appropriate discipline.

As both sides concur, the hearing officer's role is defined by the MOU. "The interpretation of an MOU . . . presents questions of law that we review independently on appeal when, as here, there was no conflicting extrinsic evidence presented as to its meaning. [Citations.]" (*Santa Clara County Correctional Peace Officers' Association, Inc. v. County of Santa Clara* (2014) 224 Cal.App.4th 1016, 1027.)

The MOU does not expressly state what standard of review the hearing officer is supposed to apply. Nevertheless, the standard of review is necessarily implied by the procedures that the MOU prescribes, in two respects.

First, the MOU requires the hearing officer to conduct a full-scale evidentiary hearing. The employer must give the employee notice of the proposed discipline and an opportunity to respond. Otherwise, the MOU does not require the employer to conduct any investigation, hold any hearing, or make any findings before imposing discipline. However, it does require the hearing officer to hold an evidentiary hearing. It also requires the hearing officer to issue findings of fact and conclusions of law. Thus, the

9

hearing officer's role goes beyond merely reviewing the evidence that was before the employer or the employer's findings.

Indeed, the Department's position is somewhat inconsistent. It evidently concedes that the hearing officer can exercise independent judgment with respect to whether the misconduct actually occurred, but not with respect to whether the discipline was appropriate. However, there is no way to read the MOU as prescribing two different standards of review.

Second, the MOU allows the hearing officer to "sustain, *modify*, or rescind" the discipline. (Italics added.) If the Department had sole discretion regarding discipline, and if the hearing officer's only role was to determine whether the Department abused its discretion, then the MOU would not let the hearing officer modify the discipline independently; rather, the hearing officer would be required to remand to the Department.

Significantly, a trial court can overturn administrative action when it is arbitrary or capricious. (Code Civ. Proc., § 1094.5, subd. (b).) If a hearing officer could overturn a disciplinary penalty only when it is arbitrary and capricious, there would be no reason to let a hearing officer review the penalty at all; that could be left up to a court.

The Department places great weight on the provision that the hearing officer must sustain the discipline if it was "appropriate." The Department defines "appropriate" as "reasonable, not arbitrary, not capricious, or [not] without basis." However, "appropriate," in this context, simply means "[s]pecially fitted or suitable, proper." (Oxford English Dictionary Online (3d ed. 2000; online version Jun. 2014)

10

<http://www.oed.com/view/Entry/9870> (as of Jul. 18, 2014).) This seems consistent with some exercise of independent judgment on the part of the hearing officer.

As the trial court noted, *Kolender v. San Diego County Civil Service Com.* (2005) 132 Cal.App.4th 1150 supports the view that the hearing officer exercises independent judgment. In *Kolender*, a sheriff's deputy who had been terminated appealed to the county civil service commission. (*Id*. at p. 1154.) The commission modified the discipline from termination to a suspension and demotion. (*Id*. at p. 1152.) The sheriff's petition for a writ of mandate was denied. (*Ibid*.)

On appeal, the sheriff argued that the commission should have reviewed his findings under the substantial evidence standard. (*Kolender v. San Diego County Civil Service Commission*, *supra*, 132 Cal.App.4th at p. 1156.) The appellate court disagreed. Rather, it held that "the Commission should independently review the facts and law, and the Sheriff's findings and final disciplinary order are not due substantial deference." (*Id*. at p. 1157.)

The court explained that the commission, acting through a hearing officer, was supposed to hold "a full evidentiary hearing." (*Kolender v. San Diego County Civil Service Com.*, *supra*, 132 Cal.App.4th at p. 1157.) Moreover, Government Code section 31108 authorized the commission to "affirm, modify or revoke" the sheriff's disciplinary order. (*Id*. at pp. 1156, fn. 3 & 1157.) In the court's view, the power to modify was "more consistent with an independent review than with substantial evidence review of the

11

Sheriff's finding. The Commission modifies by using its own judgment to evaluate the facts and the law and reach a conclusion that might differ from the Sheriff's." (*Ibid.*)

The Department argues that *Kolender* is not controlling here because it involved the civil service provisions of the Government Code, whereas this case involves an MOU. The underlying reasoning in *Kolender*, however, does not rest on this distinction. In any review process, a provision that the reviewer must hold a full evidentiary hearing tends to show that the reviewer is supposed to exercise independent judgment; this is true regardless of whether the review process is contractual or statutory. Likewise, a provision, whether contractual or statutory, that a reviewer can "modify" a decision tends to show that the reviewer is supposed to exercise independent judgment.[3]

The Department also argues that, if the hearing officer is allowed to exercise independent judgment regarding the discipline to be imposed, "the Department would have no role in discipline other than the investigation itself, and perhaps to merely recommend the discipline any action it believes is necessary, and the hearing officer's function would then include the determination and imposition of discipline based on his or her own judgment of the merits of the case after the hearing. This would strip the

---

[3] The Department also argues that *Kolender* is distinguishable because (1) Quintanar was demoted, not terminated, (2) Quintanar's discipline was sustained by the hearing officer, not modified, and (3) it was Quintanar, not the Department, who filed a petition for a writ of mandate in the trial court. Frankly, these distinctions are as irrelevant to the standard of review as the hearing officer's hair color or the employee's sign of the zodiac.

12

Department of its ability to maintain good order and discipline . . . and regulate the conduct of its employees."

We are not convinced, however, that the sky is falling. The Department is entitled to introduce evidence of the standards that it uses in determining the appropriate degree of discipline; for example, in this case, it introduced its disciplinary matrix. Such evidence is highly persuasive, because it represents the Department's considered judgment based on its administrative experience and expertise, and also, as the hearing officer noted, because employees are on notice of it. Likewise, if a supervisor, such as Chief Deputy Thetford, chooses to depart from the disciplinary matrix, the Department is entitled to present evidence of the reasons for that departure. A hearing officer on the parties' list presumably becomes familiar with the applicable disciplinary standards. While the hearing officer exercises independent judgment, that judgment must be based on the evidence, and it is subject to reversal if it is exercised arbitrarily or capriciously.

The bottom line, as Quintanar points out, is that in the MOU, sheriff's deputies bargained for and obtained an impartial review process. Thus, the Department, in exchange for valuable consideration, gave up at least some control over employee discipline. The task before us is to decide precisely how much control it gave up. Based on the wording chosen by the parties to the MOU, we conclude that the Department gave up any requirement that the hearing officer defer to its discretion.

13

Having so concluded, however, we disagree with the trial court's additional conclusion that the hearing officer failed to exercise independent judgment. The trial court's remand order specifically directed the hearing officer, if he had not used his independent judgment before, "to do so now and render a new decision." In his response, he did not render a new decision, implying that he had already used his independent judgment. At a minimum — unless we are willing to conclude that he wholly defied the trial court's writ — we must construe his response as indicating that the outcome would have been the same even if he had exercised independent judgment.

In his response, the hearing officer stated, "I independently analyzed and assessed the discipline . . . ." He also stated, "I gave my independent analysis concerning why I did not think there was sufficient reason to reduce the demotion to an 80-hour suspension." Significantly, while he agreed that a departure from the disciplinary matrix was called for, he gave different reasons. Chief Deputy Thetford had relied on "the egregious nature" of Quintanar's use of force, which, in his view, was inconsistent with Quintanar's rank. By contrast, the hearing officer relied on "inconsistencies in . . . Quintanar's testimony," which showed Quintanar's "lack of understanding of the inappropriateness of his misconduct" and Quintanar's "fail[ure] to take responsibility for his misconduct. . . ."

Admittedly, the hearing officer also stated, "[I]t is relatively well accepted that the arbitrator should not substitute his/her view for that of the decision maker unless the discipline that is imposed is outside the range of what would be reasonable . . . ." He

14

added, "If the Court is asking me if I would have imposed the demotion based on my independent review and analysis, I cannot answer that question since that is not how I view my role as arbitrator." These remarks, however, addressed the distinct question of whether he believed that he was *required* to use his independent judgment. Elsewhere, he made it clear that the exercise of his independent judgment would not have changed the outcome.

"'A writ of administrative mandamus will not be issued unless the court is persuaded that an abuse of discretion was prejudicial. [Citation.] In other words, the reviewing court will deny the writ, despite abuse of discretion, if the agency's error did not prejudicially affect the petitioner's substantial rights.' [Citations.]" (*Thornbrough v. Western Placer Unified School District* (2013) 223 Cal.App.4th 169, 200.) Here, the trial court correctly identified an abuse of discretion.[4] However, it erred by treating the abuse of discretion as prejudicial.

---

[4] The role of a hearing officer's independent judgment appears to be a recurring issue on which the trial court wanted guidance. It remarked to counsel for the Department, "[W]e did in our last case together . . . have this issue kind of percolating in the background." It also stated, "[M]aybe we need to dig into this, because I imagine this comes up a lot. Administrative judges are not one hundred percent sure of what the scope really is, and then the briefing comes in and it makes my job really challenging . . . ."

15

IV

DISPOSITION

The judgment is reversed and the matter is remanded for further proceedings not inconsistent with this opinion. In the interest of justice, each side shall bear its own costs on appeal.


RICHLI
J.

We concur:

McKINSTER
Acting P. J.

CODRINGTON
J.

Filed 10/24/14

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| JOSE QUINTANAR, | |
| Plaintiff and Respondent, | E058232 |
| v. | (Super.Ct.No. RIC1119087) |
| COUNTY OF RIVERSIDE et al., | **ORDER GRANTING PUBLICATION AND MODIFYING OPINION** |
| Defendants and Appellants. | [NO CHANGE IN JUDGMENT] |

THE COURT

Certification of the opinion for nonpublication dated October 15, 2014 is hereby vacated and set aside.

IT IS ORDERED that the request for publication of the opinion filed on October 15, 2014 is GRANTED. The opinion meets the standards for publication as specified in California Rules of Court, rule 8.1105(c).

17

IT IS FURTHER ORDERED that the opinion filed in this matter on October 15, 2014 is modified as follows:

The last sentence in the first paragraph on page 11, which currently states "The sheriff's petition for a writ of mandate was denied" is changed to "The San Diego County Sheriff's petition for a writ of mandate was denied."

The first sentence in the second paragraph on page 11, which currently states "On appeal, the sheriff argued that the commission should have reviewed his findings under the substantial evidence standard" is changed to "On appeal, the County of San Diego Sheriff argued that the commission should have reviewed his findings under the substantial evidence standard."

On page 1 and 16 of the opinion, the words "NOT TO BE PUBLISHED IN OFFICIAL REPORTS" are replaced with the words "CERTIFIED FOR PUBLICATION."

18

Except for these modifications, the opinion remains unchanged.  These modifications do not effect a change in judgment.

CERTIFIED FOR PUBLICATION


RICHLI _____
                                                                            J.

We concur:


McKINSTER _____
            Acting P. J.


CODRINGTON _____
                        J.