Filed 11/12/15  P. v. Daly CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D066727 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. JCF32604) |
| KENDRICK DALY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Imperial County, Matias R. Contreras, Judge.  Affirmed.

Sheila O'Connor, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Defendant and appellant Kendrick Daly was convicted of possessing a dirk or dagger while a prisoner of the state of California.  Defendant is a prisoner at Calipatria State Prison in Imperial County.  During a strip search, defendant removed from his pants a weapon constructed from plastic sharpened to a point for stabbing attacks.  Defendant's

prison issued pants had been modified with an additional pocket in the crotch of the pants. Defendant denied ever having the weapon in his possession and claimed the modifications made to his pants were for the purpose of smuggling apples out of the prison cafeteria.

Defendant's counsel has made no argument for reversal but filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 asking that we review the trial record for error. Pursuant to *Anders v. California* (1967) 386 U.S. 738, defendant's counsel lists possible but not arguable issues: (1) Does sufficient evidence exist to prove defendant was in possession of the dirk/dagger?; (2) Did the court properly deny the defense motion pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531?; and (3) Did the court abuse its discretion in not striking the prior strike under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497? We find the trial court did not commit any errors and affirm the judgment in full.

## PROCEDURAL BACKGROUND

The Grand Jury of Imperial County indicted defendant on a charge of possessing a dirk or dagger in late February 2014. (Pen. Code, § 4502, subd. (a).)[1] The People further alleged that defendant suffered four serious or violent felony priors and that defendant committed the instant offense while incarnated in a state prison. (§§ 1170.12, subds. (a)–(d), 667, subds. (b)–(i) & 1170.1, subd. (c).)

An Imperial County jury convicted defendant in early July 2014. The court found true the allegations that defendant suffered three prior convictions. The court sentenced

---

[1] All further statutory references will be to the Penal Code unless otherwise noted.

defendant to the middle term of three years and, based upon the prior strike, doubled his sentence to six years.

FACTUAL BACKGROUND

*Prosecution Evidence*

In late May 2013, Sergeant Juan Reyes, a correctional officer at Calipatria State Prison, received an anonymous note. Acting based upon the contents of the note, Reyes instructed Officer Espinoza to escort defendant to a holding cell and conduct an unclothed body inspection of defendant. Defendant was calm and cooperative. Before defendant entered the cell, Espinoza conducted a visual inspection of the holding cell for contraband. While Espinoza inspected the cell, defendant stood behind him, un-handcuffed. Reyes testified that it was standard procedure to handcuff the prisoner while making a visual inspection of the holding cell. The holding cell had metal mesh walls that were see-through except for a bottom section that was solid. The mesh walls were painted in an off-white, beige, or light brown color.

Defendant entered the cell and took off his clothes as instructed by Espinoza. Espinoza watched defendant lean over his right shoe to untie it while reaching into his waistband with his left hand, removing an object from his pants, and placing the object on the ground. Initially, Espinoza did not recognize the object, but he later determined the object to be a weapon made out of plastic. Espinoza described the weapon as being six and a half inches long and an inch wide with one end sharpened to a point. The weapon was white, pink, and brown in color. Its color was similar to the detention cell's mesh walls.

Upon spotting the object, Espinoza commanded defendant to place his hands

3

through a hole in the cell, allowing Espinoza to handcuff defendant. After handcuffing defendant, Espinoza entered the cell and retrieved the weapon. Espinoza then continued the unclothed search of defendant, which included examining defendant's clothes. Espinoza found defendant's pants had been modified by having a long piece of cloth sewn into the waistband of defendant's pants, forming a sort of pocket. Espinoza showed the weapon and altered pants to Reyes approximately two to five minutes after being ordered to conduct the search. Reyes identified the weapon as one that could cause great bodily injury or death via a stabbing motion. Reyes also testified that the pocket sewn into the pants was capable of holding the weapon and most likely designed for that purpose.

*Defense Evidence*

Defendant testified that Espinoza patted him down before entering the cell for the strip search. The pat-down search revealed no contraband. Espinoza did not conduct a visual inspection of the cell before defendant entered. Once in the cell, Espinoza instructed defendant to "strip out," and he complied by removing his clothes. Espinoza searched defendant's clothes and returned them to defendant. Finding nothing in defendant's clothing, Espinoza opened the cell door to let defendant out. As defendant was leaving, Espinoza said "what's that" and pointed at an objected sitting in the corner of the holding cell. The object was the plastic weapon, sitting on its left side standing at a 30–45 degree angle. Defendant denied ever having the weapon in his possession or having seen it before Espinoza pointed to it.

Defendant acknowledged modifying his pants in violation of prison regulations, but he denied using the extra pocket to carry a weapon. Instead, defendant claimed he

4

would tie a sock to the extra piece of cloth and fill the sock up with apples. Defendant testified he would smuggle as many as 10 to 15 apples at a time underneath his clothes.

Defendant has suffered injuries that he claims caused nerve damage to his left arm. He claims this nerve damage makes it impossible to close his hand and extremely difficult for him to pick something up with his left hand, such as the weapon.

*Rebuttal Evidence*

Espinoza testified that he was aware that prisoners smuggle fruit out of the cafeteria to produce pruno, a type of alcoholic beverage commonly produced by prisoners. However, he stated that, based upon his experience working as a corrections officer, it would be impossible for an inmate to smuggle as much fruit under his clothes as defendant claimed without being noticed by corrections officers. Espinoza denied conducting a pat-down search of defendant prior to the strip search. He also testified that he had never seen a modification to the pants such as defendant made used to smuggle fruit, but based upon his training he knew such modifications to clothing were commonly used to conceal weapons. While observing defendant in court, Espinoza saw defendant pick up a piece of paper with his left hand.

## DISCUSSION

Defendant's counsel has failed to find any grounds for reversible error and has filed a brief pursuant to *People v Wende*, laying out the factual and procedural history of the case and requesting that the court review the record for any reversible error it may have missed. Defendant has had the opportunity to provide us with supplemental briefing, but he has apparently declined to do so. Pursuant to *Anders v. California*, *supra*, 386 U.S. 738, defendant's counsel has provided us with possible but not arguable issues

5

that we address below.

A. *Sufficiency of the Evidence that Defendant Possessed a Dirk or Dagger*

When a defendant challenges the sufficiency of the evidence presented at trial, the appellate court must review the record "to determine whether it contains substantial evidence—i.e., evidence that is credible and of solid value—from which a rational trier of fact could have found the defendant guilty beyond a reasonable doubt." (*People v. Green* (1980) 27 Cal.3d 1, 55.) The reviewing court must "presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.) The testimony of a single witness is sufficient to prove any fact in dispute. (Evid. Code, § 411.) " '[N]either conflicts in the evidence nor " 'testimony which is subject to justifiable suspicion . . . justif[ies] the reversal of a judgment, for it is the exclusive province of the [trier of fact] to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.' " [Citations.] Testimony may be rejected only when it is inherently improbable or incredible, i.e., ' "unbelievable *per se*," ' physically impossible or ' "wholly unacceptable to reasonable minds." ' [Citation.]" (*Kolender v. San Diego County Civil Service Com.* (2005) 132 Cal.App.4th 1150, 1155.)

Section 4502 prohibits prisoners from possessing or carrying any weapons including "any dirk or dagger or sharp instrument." The trial record reveals sufficient evidence to support conviction. The jury heard testimony that a corrections officer witnessed defendant remove an object from his pants during a strip search, that the object

6

turned out to be a plastic object with a sharpened end, that this object was a weapon capable of causing great bodily injury or death, that the cell where defendant was strip searched was visually inspected by the officer for contraband before defendant was searched, and that defendant's pants contained a modification that would allow him to hide the object on his person. Defendant offered his own testimony that contradicted much of the testimony from the state witness, but the assessment of a witness's credibility is generally up to the jury and not the reviewing court. It is only when the testimony relied upon by a finder of fact is inherently improbable or fantastical that a reviewing court may reverse. Here, the testimony of the prosecution's witnesses describes events that are at the very least plausible, and the jury's reliance on the testimony certainly does not justify reversal of defendant's conviction. From the evidence presented at trial, the jury reasonably found that defendant had a "dirk or dagger or sharp instrument" in his possession.

B. *Denial of Pitchess[2] Motion*

Defendant filed a *Pitchess* motion with the trial court, requesting the production of any personnel records regarding Officer Espinoza from the Department of Corrections and Rehabilitation that could show Espinoza had a history of using excessive force, falsifying evidence or making false reports. A pretrial hearing was held in late May 2014. At the hearing, declarations stating that the Department of Corrections and Rehabilitation (with the exception of one file) had no records containing evidence relevant to defendant's request were received by the court. One file, a claim by an inmate

---

[2] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

claiming that a corrections officer harassed him by improperly ordering and conducting a search of the inmate's cell and person was given to the court and examined in camera. The file related that Officer Espinosa had been interviewed as a witness because he participated in the disputed search on the orders of another corrections officer, but the inmate complaint was not directed against Espinoza and the inmate reported that Espinoza treated him professionally. Espinoza reported that while in his presence, the subject of the complaint behaved professionally toward the inmate. The court concluded the document was not discoverable for the purpose of showing that Espinoza has a history of falsifying evidence.

"*Pitchess*, *supra*, 11 Cal.3d 531, and its statutory progeny are based on the premise that evidence contained in a law enforcement officer's personnel file may be relevant to an accused's criminal defense and that to withhold such relevant evidence from the defendant would violate the accused's due process right to a fair trial. *Pitchess* and Evidence Code sections 1043 through 1047 also recognize that the officer in question has a strong privacy interest in his or her personnel records and that such records should not be disclosed unnecessarily. Accordingly, both *Pitchess* and the statutory scheme codifying *Pitchess* require the intervention of a neutral trial judge, who examines the personnel records in camera, away from the eyes of either party, and orders disclosed to the defendant only those records that are found both relevant and otherwise in compliance with statutory limitations. In this manner, the Legislature has attempted to protect the defendant's right to a fair trial and the officer's interest in privacy to the fullest extent possible. [Citation.]" (*People v. Mooc* (2001) 26 Cal.4th 1216, 1227.) The custodian of records is only required to hand over documents from the personnel files that

8

are potentially relevant to the proceedings. (*Id.* at pp. 1228-1229.)

" 'Relevant evidence' means evidence . . . having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) "[O]nly documentation of past officer misconduct which is *similar* to the misconduct alleged by defendant in the pendinglitigation is relevant and therefore subject to discovery." (*California Highway Patrol v. Superior Court* (2000) 84 Cal.App.4th 1010, 1021.) In a case where accounts of the defendant and law enforcement officers differ, past complaints alleging falsification of evidence or falsification of reports would be relevant and may be discoverable. (*People v. Hustead* (1999) 74 Cal.App.4th 410, 418.) "A trial court's decision on the discoverability of material in police personnel files is reviewable under an abuse of discretion standard." (*People v. Jackson* (1996) 13 Cal.4th 1164, 1220.) Abuse of discretion by the court may be demonstrated by showing the ruling was " 'arbitrary, capricious or exceeds the bounds of reason.' " (*People v. Martinez* (2014) 226 Cal.App.4th 759, 764.)

We find the court acted within its discretion. The custodian of records produced for the court only one file that was potentially relevant. This document did not contain any claims made against either Vazquez or Espinoza. Indeed, the inmate who made the complaint claimed Espinoza behaved professionally towards him. The inmate and Espinoza did differ in their opinions as to whether the subject of the complaint behaved appropriately toward the inmate, but the inmate did not make any accusations against Espinoza of falsifying reports or evidence. An argument could be made that the document was relevant as evidence of Espinoza falsifying evidence as his account of events differed slightly from the inmate's. However, given the lack of any claim of

9

falsification made by the complaining inmate, the lack of any other claims against Espinoza himself, and the privacy interest of Espinoza, the complaining inmate, and the subject of the complaint, we find the court acted within the bounds of its discretion in finding that the document was not discoverable.

C. *Refusal of Court to Strike Prior Conviction Under People v. Superior Court (Romero)*

1. Relevant Facts

Defendant was convicted of attempted murder, mayhem, and assault with a deadly weapon in the Los Angeles County Superior Court in September 2008. At the trial for the 2014 weapon possession charge, defendant's counsel requested the court on its own motion dismiss the allegation of the prior felonies as per *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*). Counsel filed a memorandum of points and authorities in support of his request. In the memorandum, counsel argued that defendant did not deserve the prior felony sentence enhancement because while defendant's latest offense was a felony, it was nonviolent and bore no financial cost to anyone. Counsel argued that defendant was not a career criminal as the 2008 felony convictions were the only convictions on his record prior to 2014. Defendant's counsel also pointed to defendant's cooperation with police, corrections officials, and the courts as evidence that defendant did not deserve the enhanced sentence.

At the sentencing hearing, the court concluded that the enhancing and mitigating factors essentially cancelled each other out and sentenced defendant to the midterm of three years imprisonment for the weapons possession charge. With respect to the prior felony enhancement, the court found that dismissing the allegations under a *Romero*

10

motion would be improper.

The court stated: "What I do is I start with the actual felonies that he was convicted of initially. Now, that is attempted murder, 245 and 203, very serious offenses and violence involved, threats of violence. What is this offense? This offense is carrying a deadly weapon with some sophistication. That was the one aggravating thing. So there is sophistication planned, carrying a deadly weapon. The initial crimes were violent crimes, attempted murder, 245, 203. If this was a possession of marijuana in jail or prison, [Deputy District Attorney] Ms. Cavil, I think that, you know, that might warrant a Romero, but it's not. . . . This doesn't take him, I don't think, outside the scheme's spirit in whole or in part." Declining to dismiss the allegations of prior violent felonies, the court doubled defendant's three year sentence to six years of imprisonment to be served consecutively to defendant's 2008 sentence.

### 2. Relevant Law

California's three strikes sentencing scheme provides for enhanced sentences for felons who have previously committed a felony defined as being either "violent" or "serious." (*Romero*, *supra*, 13 Cal.4th at pp. 504-506.) Section 1385 permits a judge to order an action dismissed " 'either of his or her own motion or upon the application of the prosecuting attorney.' " (*Romero*, at pp. 507-508.) Our state high court has construed section 1385 "as permitting a judge to dismiss not only an entire case, but also a part thereof, including the allegation that a defendant has previously been convicted of a felony." (*Romero*, at p. 508.) Dismissing the allegation of a previous conviction does not undo the actual conviction but simply allows the court to avoid applying the enhancement that would otherwise be required by statute. (*Ibid.*)

11

California's three strikes law consists of two mostly identical statutes, one passed by the Legislature (§ 667, subds. (b)–(i)), and another passed subsequently through ballot initiative (§ 1170.12). (*Romero*, *supra*, 13 Cal.4th at p. 504.) Both statutes provide that "[t]he prosecuting attorney may move to dismiss or strike a prior felony conviction allegation in the furtherance of justice pursuant to Section 1385." (*Id.* at p. 508.) Our state high court has construed the statutes as allowing a judge to dismiss a prior serious or violent felony conviction allegation on his or her own motion in the interest of justice. (*Id.* at pp. 529-530.)

A trial court's decision regarding dismissal of allegations of a prior felony is reviewed for abuse of discretion. (*Romero*, *supra*, 13 Cal.4th at p. 531.) "The trial court's power to dismiss an action under section 1385, while broad, is by no means absolute. Rather, it is limited by the amorphous concept which requires that the dismissal be 'in furtherance of justice.' As the Legislature has provided no statutory definition of this expression, appellate courts have been faced with the task of establishing the boundaries of the judicial power conferred by the statute as cases have arisen challenging its exercise. Thus, in measuring the propriety of the court's action in the instant case, we are guided by a large body of useful precedent which gives form to the above concept. [¶] From the case law, several general principles emerge. Paramount among them is the rule 'that the language of that section, "furtherance of justice," requires consideration both of the constitutional rights of the defendant, and *the interests of society represented by the People*, in determining whether there should be a dismissal. [Citations.]' [Citations.] At the very least, the reason for dismissal must be 'that which would motivate a reasonable judge.' [Citations.]" (*People v. Orin* (1975) 13 Cal.3d 937, 945-946.)

12

"From these general principles it follows that a court abuses its discretion if it dismisses a case, or strikes a sentencing allegation, solely 'to accommodate judicial convenience or because of court congestion.' [Citation.] A court also abuses its discretion by dismissing a case, or a sentencing allegation, simply because a defendant pleads guilty. [Citation.] Nor would a court act properly if 'guided solely by a personal antipathy for the effect that the three strikes law would have on [a] defendant,' while ignoring 'defendant's background,' 'the nature of his present offenses,' and other 'individualized considerations.' [Citation.] " (*Romero*, *supra*, 13 Cal.4th at p. 531.)

"[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, on its own motion, 'in furtherance of justice' pursuant to Penal Code section 1385(a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies. If it is striking or vacating an allegation or finding, it must set forth its reasons in an order entered on the minutes, and if it is reviewing the striking or vacating of such allegation or finding, it must pass on the reasons so set forth." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

3. *Discussion*

Case law requires a trial court to weigh the interest of society in incarcerating the defendant versus the interest of the defendant's constitutional rights by considering

whether the overall circumstances of the defendant's crimes fall outside the spirit of the three strikes sentencing scheme. The trial court in this case evaluated defendant's history and concluded that his crimes were of the type that the three strikes sentencing scheme is designed to punish. The court was correct and acted within the bounds of its discretion.

Defendant was previously convicted of attempted murder and related charges. Though defendant's most recent conviction did not arise from an act of violence, it did arise from defendant carrying and perhaps manufacturing a deadly weapon while incarcerated. A weapon that if used would likely have resulted in the imposition of charges similar to those defendant was convicted of in 1998. Given the clear similarity in the nature of the 1998 and 2014 convictions, the court was correct to find that defendant's convictions fit into a pattern of violent or serious criminal behavior of the kind the three strikes sentencing scheme is designed to punish. In these circumstances, the interest of justice did not require the trial court to dismiss the allegations that defendant had committed previous felonies.

## DISPOSITION

The judgment of the trial court is affirmed.

BENKE, Acting P. J.

WE CONCUR:

HUFFMAN, J.

IRION, J.

14